[Crim. No. 11049, Third Dist. Mar. 31, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM JAMES CLARK, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Stephen Berlin, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Lisa Lewis Dubois, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

REYNOSO, J.*—Defendant William James Clark was granted probation after a jury found him to be guilty of involuntary manslaughter. (Pen. Code, § 192, subd. (2).) He appeals contending: (1) He acted in self-defense as a matter of law. (2) The trial court erred in instructing the jury on involuntary manslaughter. (3) The prosecution introduced improper and prejudicial evidence of the peaceable character of the victim. (4) the trial court erred in requiring, as a condition of probation, that he make monthly payments to the children of the victim.

We hold: In light of the circumstances shown surrounding the homicide the question whether defendant's use of deadly force against the victim was justified was a factual question and not a matter of law. (2) The involuntary manslaughter instructions were proper. (3) In view of the character evidence introduced by defendant the prosecution's character evidence was proper rebuttal evidence. (4) The restitution condition of defendant's probation was proper in that it served the statutory purposes of making amends for the injury caused by defendant's

---

*Assigned by the Chairperson of the Judicial Council.

crime and rehabilitating defendant by making him aware of the damage which his actions caused to others. We affirm the judgment.

Defendant was convicted of the involuntary manslaughter of David Simmons. Defendant had met the victim's wife, Gayle, through his work at Auburn Faith Hospital, and they carried on a two-year sexual affair. Eventually defendant's wife learned of the affair and threatened to expose it to the victim. In the face of such a threat Gayle informed David of the affair and agreed to terminate it. Although David and Gayle agreed to stay together David was unable to let the matter drop. He continually brought it up to Gayle, separated from her for a time, and eventually commenced dissolution of marriage proceedings.

During the months after the affair ended David made a number of verbal threats against the defendant. Gayle related these threats to defendant. On several occasions David attempted to confront defendant and Gayle informed defendant of these attempts. On at least two occasions David engaged defendant in a vehicle chase, but defendant was able to elude David. Defendant began to carry a loaded pistol under his vehicle seat.

On the day of the homicide defendant and his wife were driving towards their home towing a trailer. David and Gayle and two of their children were driving in the opposite direction in David's truck. When David saw defendant he turned around and let Gayle and the children out of the truck, and went in pursuit of defendant. David caught up with defendant and motioned for him to stop. He appeared furious. Defendant's wife told him to let her out, and then advised him to drive to their house where she could go inside so defendant could "have it out" with David once and for all. Defendant said that it was bound to happen sooner or later.

David passed defendant's vehicle and drove out of sight. When defendant turned into his driveway he saw that David had angled his truck in the driveway so that defendant could not pass. When defendant stopped his vehicle David got out of his truck and approached defendant's window saying "your time is now." Defendant had taken his pistol out from under the seat and as David reached into the window it discharged into his chest. Defendant attempted to give first aid to David but David died as the result of the gunshot wound.

I

■ Defendant contends that the evidence establishes as a matter of law that he acted in self-defense and that the killing of David Simmons was justifiable. In order for us to sustain this contention it must appear from the evidence that no reasonable trier of fact could have found otherwise beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738].)

■ The legal doctrine of self-defense is codified in Penal Code section 197 through 199.[1] Where from the nature of an attack a person, as a reasonable person, is justified in believing that his assailant intends to commit a felony upon him, he has a right in defense of his person to use all force necessary to repel the assault; he is not bound to retreat but may stand his ground; and he has a right in defense of his person to repel the assault upon him even to taking the life of his adversary. (*People v. Collins* (1961) 189 Cal.App.2d 575, 588 [11 Cal.Rptr. 504].)
■ Justification does not depend upon the existence of actual danger but rather depends upon appearances; it is sufficient that the circumstances be such that a reasonable person would be placed in fear for his safety and that the defendant act out of that fear. (Pen. Code, § 198; *People v. Collins, supra.*) "He may act upon such appearances with safety; and if without fault or carelessness he is misled concerning them, and defends himself correctly according to what he supposes the facts to be, his act is justifiable, though the facts were in truth otherwise, and though he was mistaken in his judgment as to such actual necessity at such time and really had no occasion for the use of extreme measures." (*People v. Collins, supra,* 189 Cal.App.2d at p. 588.) ■
In defending himself, however, a person may use only that force which is necessary in view of the nature of the attack; any use of excessive force is not justified and a homicide which results therefrom is unlawful. (*People v. Young* (1963) 214 Cal.App.2d 641, 646 [29 Cal.Rptr. 595].)

---

[1]The respective Penal Code sections provide as follow: "Homicide is also justifiable when committed by any person in any of the following cases: [¶] 1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or, [¶] 2. When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultous manner, to enter the habitation of another for the purpose of offering violence to any persons therein; or, [¶] 3. When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a fel-

■ Issues arising out of self-defense, including whether the circumstances would cause a reasonable person to perceive the necessity of defense, whether the defendant actually acted out of defense of himself, and whether the force used was excessive, are normally questions of fact for the trier of fact to resolve. (See *People* v. *Davis* (1965) 63 Cal.2d 648, 655 [47 Cal.Rptr. 801, 408 P.2d 129]; *People* v. *Hall* (1963) 212 Cal.App.2d 480, 483 [28 Cal.Rptr. 164]; *People* v. *Davis* (1962) 203 Cal.App.2d 18, 20 [21 Cal.Rptr. 155].) Such is not invariably the case, however. "As an abstract proposition, it is of course conceivable that a case of homicide could be presented to the grand jury in which evidence of adequate provocation or self-defense were both uncontradicted and sufficient as a matter of law; in that event it could reaonably be contended that an indictment for murder would be in excess of the grand jury's power." (*Jackson* v. *Superior Court* (1965) 62 Cal.2d 521, 528 [42 Cal.Rptr. 838, 399 P.2d 374].)

In contending that the evidence establishes self-defense as a matter of law, defendant relies upon what he terms the *Estrada-Salaz-Toledo* principle. In *People* v. *Estrada* (1923) 60 Cal.App. 477 [213 P. 67], the Court of Appeal reversed a conviction for murder where the only prosecution evidence which showed that the defendant committed the homicide also showed that he did so in response to a sudden felonious attack by the victim. (60 Cal.App. at pp. 482-483.) In *People* v. *Salaz* (1924) 66 Cal.App. 173 [225 P. 777], the Court of Appeal reversed a conviction for manslaughter due to a "grievous" error in the reception of evidence. The evidence was extremely close, and the court rule that if it could not be held as a matter of law that the defendant acted in self-defense then the error in the reception of evidence had to be considered prejudicial. (66 Cal.App. at p. 183.) The court noted, however, that if thre is any well-established circumstance in the case which may

---

ony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed; or, [¶] 4. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace."

Section 198: "A bare fear of the commission of any of the offenses mentioned in the sub-divisions 2 and 3 of the preceding section, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone."

Section 199: "The homicide appearing to be justifiable or excusable, the person indicted must, upon his trial, be fully acquitted and discharged."

reasonably be regarded as incompatible with self-defense then the question is one for the jury. (*Id.*, at p. 181.) In *People v. Toledo* (1948) 85 Cal.App.2d 577 [193 P.2d 953], the Court of Appeal reversed a conviction for manslaughter where the uncontroverted and corroborated evidence showed that the defendant struck the deceased with a pipe only after the deceased had hit the defendant with a bottle and then attacked defendant and others with a knife. The conviction was found not to be supported by the record. (85 Cal.App.2d at p. 582.)

In *People v. Collins, supra*, 189 Cal.App.2d 575, the Court of Appeal relied upon the decisions in *Estrada, Salaz* and *Toledo* in reversing a conviction for manslaughter. In that case the sole evidence which established that the defendant committed the homicide established that he did so to prevent a homosexual assault upon him. (189 Cal.App.2d at p. 592.) However, in *People v. Davis, supra*, 203 Cal.App.2d 18, the Court of Appeal distinguished the decisions in *Estrada, Salaz, Toledo* and *Collins*, and affirmed a conviction of murder. In that case the deceased bar patron cursed women patrons of the bar, pushed or shoved the defendant perhaps three times, cursed the defendant and threatened to kick him, draped his coat over his arm, and continued to curse other bar patrons. The defendant then fatally stabbed the deceased. The Court of Appeal held that self-defense was not established as a matter of law, noting that in *Estrada, Salaz* and *Toledo* the evidence was uncontroverted that the killings occurred in response to attacks with deadly weapons, and that in *Collins* the uncontroverted evidence showed that the killing occurred in response to a violent sexual attack. (203 Cal.App.2d at p. 20.)

The rule which may be dervied from the decisional law is that where the evidence is uncontroverted and establishes all of the elements for a finding of self-defense it may be held as a matter of law that the kiliing was justified; however, where some of the evidence tends to show a situation in which a killing may not be justified then the issue is a question of fact for the jury to determine. (*People v. Acosta* (1955) 45 Cal.2d 538, 542 [290 P.2d 1].) Where the evidence is uncontroverted, but reasonable persons could differ on whether the resort to force was justified or whether the force resorted to was excessive, then the issue is a question of fact for the trier of fact. (*People v. Bates* (1967) 256 Cal. App.2d 935, 939 [64 Cal.Rptr. 575]; *People v. Jones* (1961) 191 Cal. App.2d 478, 482 [12 Cal.Rptr. 777].)

■ The principles of self-defense are founded in the doctrine of necessity. This foundation gives rise to two closely related rules which are applicable in this case. First, only that force which is necessary to repel an attack may be used in self-defense; force which exceeds the necessity is not justified. (*People* v. *Moody* (1943) 62 Cal.App.2d 18, 22 [143 P.2d 978].) Second, deadly force or force likely to cause great bodily injury may be used only to repel an attack which is in itself deadly or likely to cause great bodily injury; thus "[a] misdemeanor assault must be suffered without the privilege of retaliating with deadly force." (*People* v. *Jones, supra*, 191 Cal.App.2d at p. 482. See also *People* v. *Anderson* (1922) 57 Cal.App. 721, 727 [208 P. 204].) Under these two principles a person may be found guilty of unlawful homicide even where the evidence establishes the right of self-defense if the jury finds that the nature of the attack did not jusitfy the resort to deadly force or that the force used exceeded that which was reasonably necessary to repel the attack. (See *People* v. *Whitfield* (1968) 259 Cal.App.2d 605, 609 [66 Cal.Rptr. 438]; *People* v. *Young, supra*, 214 Cal.App.2d at p. 646.)

■ There can be no question in this case that at the time of the homicide defendant had the right to defend himself against the attack of the victim. The victim had indicated in no uncertain terms his intent to force a physical confrontation with defendant, and he had attempted on several occasions to do so. It cannot be denied that when the victim chased defendant to his driveway and then came towards his Bronco saying defendant's "time is now," he intended to assault defendant. Under such circumstances defendant's right of self-defense was established as a matter of law; however, in order for the homicide to be justified as a matter of law it must further appear that defendant's resort to deadly force was necessary or appeared to be necessary at the time.

Although defendant was aware that the victim owned a pistol, there was no indication that he had threatened defendant with that pistol, either in person or through others who would convey such threats to defendant. The victim had the opportunity on several occasions to use a weapon against defendant if that had been his intent, yet he did not do so. Moreover, at the time of his death the victim was not armed with a weapon, and defendant did not tesify that he believed that victim intended to use a weapon against him. The only intent on the part of the victim was to engage defendant in fisticuffs, to "beat him up," and the evidence did not establish that the victim was so physically overwhelm-

ing that· defendant had reason to fear great bodily injury from such an encounter.

On appeal from a judgment of conviction it is not our function, as an appellate court, to interject ourselves into the fact finding role. We must view the record in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the fact finder could reasonably deduce from the evidence. (*People* v. *Johnson, supra,* 26 Cal.3d at p. 576.) It is only when, in light of the record so viewed, it appears that no reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt that a reversal of the judgment is proper. (*Ibid.*) When this standard of review is applied to the case at bar we cannot hold that as a matter of law defendant was justified in using deadly force. Defendant's right of self-defense was established, but the nature of the force necessary to that defense was not. In light of the record a reasonable jury could have found beyond a reasonable doubt that defendant's use of deadly force at the time and place was not justified. We thus reject defendant's contention that the judgment of conviction of involuntary manslaughter must be reversed for insufficient evidence.

## II

■ Defendant contends that the court erred in instructing the jury on involuntary manslaughter. Manslaughter is the unlawful killing of a human being without malice. (Pen. Code, § 192.) Manslaughter is involuntary "... in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unalwful manner, or without due caution and circumspection ...," except when it involves the driving of a vehicle. (Pen. Code, § 192.) The trial court instructed the jury that it could find defendant guilty of involuntary manslaughter if it found that the killing occurred: "1. During the commission of a misdemeanor which is inherently dangerous to human life, namely, the offense of battery; or [¶] 2. In the commission of an act ordinarily lawful which involves a high degree of risk of death or great bodily harm, without due caution and circumspection." (CALJIC No. 8.45 (1980 revision).) Defendant argues that neither theory applies to this case.

We reject defendant's contention that the trial court erred in instructing the jury on involuntary manslaughter through the commission

of an act involving a high risk of death or great bodily injury without due caution and circumspection. Defendant specifically requested this instruction both in his list of requested jury instructions and orally before the court. Any error in the instruction must be regarded as a tactical choice and thus invited error, which is not a cause for reversal on appeal. (*People* v. *Phillips* (1966) 64 Cal.2d 574, 580-581, fn. 4 [51 Cal.Rptr. 225, 414 P.2d 353].)

█ In any event, a conviction for involuntary manslaughter is appropriate where the jury finds that the defendant's resort to deadly force was not reasonable. (See *People* v. *Yuhas* (1963) 222 Cal.App.2d 61, 65-66 [34 Cal.Rptr. 698]; *People* v. *Jackson* (1962) 202 Cal.App.2d 179, 183 [20 Cal.Rptr. 592].) █ When a homicide is not intentional, but arises out of the criminal negligence of the perpetrator, then the homicide is involuntary manslaughter. (See *In re Dennis M.* (1969) 70 Cal.2d 444, 460-461 [75 Cal.Rptr. 1, 450 P.2d 296].) █ It is recognized that firearms are dangerous instrumentalities and require a great degree of care in their use; and criminal negligence is frequently found in an unintentional killing with a gun. (*Ibid.*) Defendant did not testify that he intentionally shot David Simmons; he explained that the gun just went off. Under such circumstances the jury could have properly found that defendant did not intentionally kill Simmons, but that the death was the result of the failure to exercise proper care under the circumstances. The involuntary manslaughter instruction, as it related to what might be termed criminally negligent manslaughter, was thus proper.

█ Defendant objected to the instruction on involuntary manslaughter which occurs in the commission of a misdemeanor. He contends that the trial court erred in so instructing since, according to defendant, battery is not a misdemeanor dangerous to human life. It has frequently been held that assault and/or battery will support a conviction of involuntary manslaugther where death is caused thereby. (*People* v. *McGee* (1947) 31 Cal.2d 229, 238 [187 P.2d 706]; *People* v. *Morgan* (1969) 275 Cal.App.2d 603 [79 Cal.Rptr. 911].) Indeed, Witkin reports that the great majority of the cases involve assault or battery. (1 Witkin, Cal. Crimes (1963) § 339, p. 310.) In *People* v. *Williams* (1975) 13 Cal.3d 559, at pages 563 and 564 [119 Cal.Rptr. 210, 531 P.2d 778], the California Supreme Court held that a trial court erred in failing to instruct the jury on battery as the underlying crime in an involuntary manslaughter instruction. Under such circum-

stances we are bound by the doctrine of stare decisis to follow precedent and we reject defendant's contention that assault and battery cannot support a conviction of involuntary manslaughter through the misdemeanor-manslaughter rule. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

■ In any event, if the court could be considered to have erred in giving the misdemeanor-manslaughter instruction, it must appear reasonably probable that a result more favorable to the defendant would have been reached in the absence of such error before reversal is proper. (*People* v. *Williams, supra*, 13 Cal.3d at p. 563; *People* v. *Wright* (1976) 60 Cal.App.3d 6, 12 [131 Cal.Rptr. 311].) In *People* v. *Wright, supra*, this court held that it was error for a trial court to instruct the jury on misdemeanor-manslaughter in connection with a misdemeanor child abuse violation, since that crime specifically excludes life endangering actions from misdemeanor treatment. (Pen Code, § 273a, subd. (2).) No prejudice was found, however, since the crucial issue was whether the defendant was the agency of death and when the jury found that he was there was no reasonable probability of acquittal. (60 Cal.App.3d at p. 12.)

In this case there was no question that defendant was the agent of death. The major issue was whether the homicide was justifiable through self-defense. When the jury rejected the claim of justification, as it clearly did, there was no reasonable possibility of acquittal. Defendant was convicted of the least onerous homicide charge possible, and in view of the jury's rejection of the claim of justification it cannot be held that he was prejudiced by the misdemeanor-manslaughter instruction.

### III

■ On rebuttal the People were allowed to present testimony of a former acquaintance of David. He described David as cordial and friendly, easy to be around, level-headed, considerate, and empathetic. He stated that he had never heard David discuss or threaten suicide or bodily harm to another. Defendant contends that this evidence was impermissible and prejudicial.

Where a person's character or a trait of his character is at issue it may be proven by any permissible evidence including opinion testimony, evidence of reputation, or evidence of a specific instance of the person's

conduct. (Evid. Code, § 1100.) Evidence of a person's character, however, is generally not admissible to prove his conduct on a specific occasion. (Evid. Code, § 1101, subd. (a).) There are statutory exceptions to this general rule. A defendant may introduce evidence of a victim's character or a trait of his character to provide his conduct on a specific occasion (except as limited in sex offense cases). (Evid. Code, § 1103, subd. (a)(1).) Where a defendant has introduced character evidence to prove a victim's conduct then the prosecution may introduce such evidence to rebut the evidence introduced by the defendant. (Evid. Code, § 1103, subd. (a)(2).)

Defendant raised the issue of self-defense. He attempted to show that at the time of the homicide David was in a violent rage and approached him in a speedy and furious manner so that he was justified in reacting with deadly force. In support of this theory he directed his case at establishing the violent character of the victim. In view of this evidence the rebuttal evidence introduced by the People was proper.

Defendant argues, however, he did not intend to prove the victim's character for violence,—he only sought to show his personal knowledge of the victim. We reject such a contention. The evidence introduced by defendant was directly probative of the victim's character for violent behavior on the fatal day. In view of this evidence neither the court nor the prosecution was required to accept defendant's representation that he intended only to prove his personal knowledge of the victim. We find no error in the introduction of the character evidence in rebuttal.

## IV

As a condition of probation the trial court directed defendant to pay $100 per month to the children of the victim throughout the five-year probation period. As defendant notes, this amounts to an order for the payment of $6,000. Defendant contends that this is an improper condition of probation in that it directs the payment of unliquidated damages to persons other than the direct victim of his crime.

In California the statutory basis for an order requiring restitution as a condition of probation is Penal Code section 1203.1, which provides that a trial court may provide for "reparation in proper cases," and that in granting probation the court "shall consider whether the defendant as a condition of probation shall make restitution to the victim." In grant-

ing probation a trial court may impose such conditions "as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer." (Pen. Code, § 1203.1, par. 4.) In determining the proper conditions of probation a trial court has broad, but not unlimited, discretion. (*People v. Richards* (1976) 17 Cal.3d 614, 619 [131 Cal.Rptr. 537, 552 P.2d 97].) In order to be valid a condition of probation must serve one of the purposes of probation listed in Penal Code section 1203.1

The California provisions for restitution as a condition of probation contemplate a purpose of reparation for injury to any person due to the violation of the law. This presents no problem when a convicted defendant is required to make restitution to the victim for damages actually caused by the crime. Disposing of possible civil liability, however, cannot be a function of restitution in a criminal case. Among the reasons for this rule are that the criminal justice system is essentially incapable of determining civil liability and the extent of such liability; and such an invasion of civil law by a criminal court would deprive the defendant of important due process rights including pleadings, discovery and a jury trial on issues of liability and damages. "[C]ourts must tread lightly in this area lest they be reduced to 'mere collection agencies' [citations omitted], and restitution must in each case be narrowly tailored to serve a purpose described in section 1203.1." (*Id.*, at p. 620.)

Defendant would have us hold that a restitution condition may never be ordered in favor of anyone other than the direct victim of a crime and may not be ordered for any amount other than direct liquidated damages. We do not believe that to be the appropriate rule. In our view, the propriety of a particular restitution condition must be determined by reference to the purposes of probation in light of the facts and circumstances of each case. The decisions of our Supreme Court in *People v. Lent* (1975) 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545], and *People v. Richards, supra*, 17 Cal.3d 614, convince us that this is the proper rule.

*Lent* and *Richards* were argued before the Supreme Court on the same day. (See dis. opn. of Clark, J., in *Richards*, 17 Cal.3d at p. 626.) In each case the trial court had ordered a convicted thief to make restitution to the victim of a different alleged theft even though the jury had

acquitted the thief of theft from that victim. In *Lent* the Supreme Court upheld the restitution condition because the trial court had held an extensive evidentiary hearing which supported its conclusion that the defendant had displayed the same type of dishonesty regarding the disposition of the funds ordered repaid to the victim as he had in the proven theft. (15 Cal.3d at p. 487; see also *Richards, supra*, 17 Cal.3d at p. 625.) In *Richards* the Supreme Court reversed the restitution condition, because the trial court had not held a probation hearing where facts supporting the order were shown, and had made no findings showing that the restitution order related to the conduct for which the defendant had been convicted. (17 Cal.3d at pp. 623-624.) The court recognized, however, that California law does not limit restitution as a condition of probation to actual losses caused by the crime for which the defendant has been convicted. (*Id.*, at pp. 619, 621.)

The rule which may be derived from the decisions in *Lent* and *Richards* is that a restitution condition of probation must be calculated to serve one of the statutory purposes for which such a condition may be imposed. A trial court has broad discretion in determining whether such a condition is appropriate, but the record must support its determination. Among the statutory purposes for which a probation condition requiring restitution may be imposed is that amends may be made "for any injury done to any person resulting from such breach [of the law]." (Pen. Code, § 1203.1, par. 4.)[2]

The trial court expressly found that David's children were "victims" of the crime for purposes of restitution within the meaning of Penal Code section 1203.1. The record supports this determination. Each of the four children were minors at the time of the homicide, the oldest being seventeen years of age. It cannot reasonably be denied that the children suffered injury by their father's death. Under such circumstances the trial court determined to impose a condition of restitution as a means of "alleviating the tragedy underlying this offense." Moreover, the condi-

---

[2]In both *Lent* and *Richards* the trial courts were concerned solely with the rehabilitative purposes of restitution. This is so because in each case the condition required payment for an injury which was not caused by the crime of which the defendant was convicted and to a person who was not in any way the "victim" of that crime. In *Lent* the condition was upheld because the record showed a nexus between the defendant's crime and the money required to be repaid. In *Richards* the order was reversed because there was no such nexus established by the record. This case must be distinguished from *Lent* and *Richards* because the trial court was concerned with more than rehabilitation; it was concerned with making amends for the injury done to the children of the victim by the loss of their father.

tion served an additional purpose in reforming and rehabilitating defendant by serving to make him aware of the damage which his actions caused to others. On the facts established by this record we find the condition of restitution to the children of the homicide victim to have been proper exercise of the trial court's discretion.

The judgment is affirmed.

Evans, Acting P. J., and Warren, J.,* concurred.

A petition for a rehearing was denied April 29, 1982, and appellant's petition for a hearing by the Supreme Court was denied June 24, 1982. Reynoso, J., did not participate therein.

---

*Assigned by the Chairperson of the Judicial Council.