Filed 5/31/13  P. v. Puebla CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061277 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN279592) |
| JOEL CANO PUEBLA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E. Mills, Judge.  Affirmed as modified.

Gideon Margolis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Joel Cano Puebla challenges his attempted murder and assault

convictions on the grounds the trial court erred in refusing to provide the jury with a self-defense instruction. We find no error. There was no substantial evidence the person or persons who stabbed the victim had any reasonable fear that the victim, or any of his cohorts, were about to inflict any bodily injury which justified the use of lethal force. Thus, a self-defense instruction was not available to Puebla.

In addition to instructional error, Puebla argues the trial court erred in imposing concurrent sentences on his separate commercial burglary and petty theft convictions. Like the Attorney General, we agree execution of sentence on Puebla's petty theft conviction should have been stayed under Penal Code[1] section 654. Accordingly, we modify the judgment to stay execution of the sentence imposed on the petty theft conviction and, as modified, affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Puebla, known on the street by the moniker "Toad," is affiliated with the Diablos, an Escondido street gang. On the evening of September 5, 2009, Puebla and a companion, Sergio Quinones, went, uninvited, to a Quinceanera party near Washington Park in Escondido. The party was being hosted by the victim, Misael Najera, for his niece.

Najera saw Puebla and Quinones, who appeared to be 15 or 16 years old, grab beer and food from the party and take it behind Najera's house. When Najera asked his niece if she knew Puebla and Quinones, she said she did not. Najera and his brother-in-

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

law then asked Puebla and Quinones to leave the party. One of the boys tried to run out of the house with beer, but Najera stopped him; in the course of doing so, he ripped the boy's shirt. The boy got very upset and started yelling, "I'm going to kill you."

Both Puebla and Quinones went into the street in front of Najera's house and would not leave. Najera's brother-in-law threw a brick at the boys in an effort to get them to leave the vicinity. The brick landed about 15 feet from the boys, and Najera retrieved it and threw it back over his fence. When Najera did so, he heard someone whistling from Washington Park and then saw three young Hispanic males emerge from the park, a location frequented by Diablos members.

Other witnesses saw the boys who had been kicked out of the party whistling and waving to the males in the park. The witnesses also saw the males from the park flashing gang signs at Najera and other party goers.

One of the males from the park went over to Puebla and Quinones and motioned for Najera to come over. Najera interpreted the gesture as an invitation to fight. Najera approached the three and immediately threw a punch at the man who had motioned for him to come over and who was standing directly in front of Najera. Najera has no memory of whether his punch landed. However, after Najera threw the punch, he immediately felt a blow coming from his right side. At trial, Najera testified he knew the blow did not come from the man in front of him because he could see him.

After being struck, Najera fell to the ground and was unconscious. Either as Najera fell, or after he fell, Najera was stabbed twice. One knife wound went through his

3

pericardium and into the right ventricle of his heart; the other wound was to his left shoulder and several inches above the nipple. Because he received immediate medical attention, Najera survived.

Another party guest, Lorenzo Rocha Hernandez (Hernandez), had come outside of the party to see what was happening and saw Najera being stabbed. Hernandez pushed the stabber and was himself stabbed in the arm in two places. Hernandez's wounds required a total of 11 staples.

Witnesses from the party did not see who stabbed Najera and Hernandez, but they all stated that Najera and Hernandez were outnumbered. After Najera and Hernandez were disabled by their knife wounds, Puebla, Quinones and the young males who had come from the park all fled.

Police arrested Puebla and Quinones three days after the fight. In the back of a police car, Puebla and Quinones spoke about the fight and their conversation was recorded. At one point, Quinones stated, "I[t] was just self defense -- what I was doing." Puebla responded by telling Quinones not to even admit he did anything but to plead innocent.

A week and a half after the fight, on September 16, 2009, Quinones's sister, Alejandra Quinones, and an acquaintance of hers, Veronica Vargas, went to the local police station and told investigators that at some point after the fight, but before Pubela was arrested, Puebla came to Vargas's house and told Vargas that he had stabbed someone. Vargas told the investigators Puebla told her: "'I guess that guy is going to

4

die.'" According to Vargas, Puebla acted "like, it's just nothing. . . . He didn't give a fuck, and that was it. Like, whatever, you know." Vargas told investigators Puebla was "[a]ll happy about it like, 'oh, I did work.' And . . . like trying to think that he's the shit, you know." Both Alejandra Quinones and Vargas later testified the statements they gave investigators were lies.

At trial, a gang expert testified assaults such as Najera suffered are typically committed for the benefit of a street gang, such as the Diablos. The expert believed that where, as here, young or "pee-wee" affiliates of a gang are publicly disrespected, the gang will typically respond with physical force as a means of vindicating its reputation. The expert also noted a probation department report indicated that following his arrest, Puebla had continuing affiliation with the Diablos.

The jury found Puebla guilty of multiple charges growing out of the assault on Najera and Hernandez, including attempted murder and assault with a deadly weapon with force likely to cause great bodily injury. (§§ 664/187, subd. (a), 245, subd. (a)(1).) With respect to other crimes unrelated to the assault, the jury found Puebla guilty of burglary, petty theft and providing false identification to a peace officer. (§§ 459, 484/490.5 & 148.9, subd. (a).) The trial court sentenced Puebla to a term of 19 years in prison.

DISCUSSION

I

As we noted, in his principal contention on appeal, Puebla argues the trial court

5

erred in denying his request for a self-defense instruction.

In a murder case, "[i]t is not error to refuse a request for instructions on self-defense when there is no evidence from which it can be inferred that the defendant feared great bodily harm or death at the hands of the victim . . . ." (*People v. Sedeno* (1974) 10 Cal.3d 703, 718; see also *People v. Flannel* (1979) 25 Cal.3d 668, 684-685.) This principle with respect to self-defense instructions in murder cases arises from the substantive law of self-defense: "The principles of self-defense are founded in the doctrine of necessity. This foundation gives rise to two closely related rules which are applicable in this case. First, only that force which is necessary to repel an attack may be used in self-defense; force which exceeds the necessity is not justified. [Citation.] Second, deadly force or force likely to cause great bodily injury may be used only to repel an attack which is in itself deadly or likely to cause great bodily injury; thus '[a] misdemeanor assault must be suffered without the privilege of retaliating with deadly force.' [Citations.] Under these two principles a person may be found guilty of unlawful homicide even where the evidence establishes the right of self-defense if the jury finds that the nature of the attack did not justify the resort to deadly force or that the force used exceeded that which was reasonably necessary to repel the attack. [Citations.]" (*People v. Clark* (1982) 130 Cal.App.3d 371, 380.)

In *People v. Clark*, the defendant argued he had established self-defense as a matter of law because of undisputed evidence the victim had chased the defendant to his driveway and approached the defendant's car with an intent to assault the defendant. In

6

rejecting this argument, the court stated stated: "Under such circumstances defendant's right of self-defense was established as a matter of law; however, in order for the homicide to be justified as a matter of law it must further appear that defendant's resort to deadly force was necessary or appeared to be necessary at the time." (*People v. Clark*, *supra*, 130 Cal.App.3d at p. 380.)

Here, the record presented at trial, interpreted most favorably toward Puebla (see *People v. Flannel*, *supra*, 25 Cal.3d at p. 685), contains nothing which suggests the use of deadly force on Najera or Hernandez was necessary or appeared to be necessary. We note that at no time before Najera walked over to Puebla, Quinones and the other male from the park, did Najera brandish any deadly weapon or make any threats of death or great bodily harm. As the Attorney General points out, the record is clear Najera and moments later, Hernandez, at most threatened Puebla, Quinones and the apparent gang member standing in the street near them, with assault. Such a threat of assault will not justify the use of deadly force. (See *People v. Clark*, *supra*, 130 Cal.App.3d at p. 380.) The fact Najera survived his knife wounds and Puebla was charged with attempted murder, rather than murder, does not alter our analysis. In either case, the use of deadly force was not justified by any of Najera's or Hernandez's conduct. Hence, the trial court did not err in denying a request for a self-defense instruction.[2]

---

2      Although the trial court refused a self-defense instruction, it did instruct the jury on attempted voluntary manslaughter based on heat of passion or sudden quarrel. The jury's rejection of heat of passion or sudden quarrel strongly suggests that any error in failing to give a self-defense instruction, if it occurred, was not prejudicial. (See *People v. Sedeno*, *supra*, 10 Cal.3d at pp. 720-721.)

II

In addition to his attempted murder conviction, Puebla was also convicted of commercial burglary (§ 459) and petty theft (§§ 484/490.5) growing out of a January 2009 shoplifting incident. The trial court sentenced Puebla to concurrent 90-day sentences on the shoplifting convictions. As we indicated at the outset, and the Attorney General agrees, the trial court should have stayed execution of the sentence on the petty theft conviction under section 654 because both it and the burglary conviction grow out of the single shoplifting course of conduct. (See *People v. Alford* (2010) 180 Cal.App.4th 1463, 1468.) Accordingly, we will modify the judgment to stay execution of the sentence on the petty theft conviction.

DISPOSITION

The judgment is modified to stay execution of sentence on Puebla's petty theft conviction, count 5, and as modified the judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:

HALLER, J.

O'ROURKE, J.

8