Filed 8/29/13  P. v. Rodriguez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FRANCISCO JAVIER RODRIGUEZ,<br><br>    Defendant and Appellant. | H038055<br>(Santa Clara County<br>Super. Ct. No. C1077096) |

Defendant Francisco Javier Rodriguez appeals from the denial of a petition for a finding of factual innocence.  Defendant contends that his trial testimony shows that he killed in self-defense, and that the trial court therefore erred in failing to declare him factually innocent of the charges of murder and attempted murder.  We conclude that the trial court properly denied defendant's factual innocence petition, and we accordingly will affirm.

### FACTUAL AND PROCEDURAL HISTORY

On the night of May 15, 2010, defendant went to Club Bahia, a Milpitas nightclub, with a few friends, including Eric Flores and Israel Quintero.  That same night, Jorge Soto went to Club Bahia with a group of friends, including Edwin Reyes, Marobert

Flores,[1] and Gabriel Diaz. When Club Bahia closed at 1:30 a.m. on May 16, 2010, Soto and members of his group fought with members of defendant's group. Eric suffered a punch to the face during the fight. Security guards used pepper spray to break up the fight. After the fight ended, Diaz heard defendant tell Soto, "I'm gonna catch you slipping."[2] That phrase is slang for sneaking up on someone or retaliating against someone.

Soto's group and defendant's group left Club Bahia. Soto's group went to Tacos al Carbon, a San Jose restaurant. One of defendant's friends drove defendant, Eric, and Quintero to defendant's house. Defendant, Eric, and Quintero got into defendant's SUV, and defendant drove toward Tacos al Carbon. During the drive, Eric complained about being punched and said that he "wanted to get them back."

Defendant's SUV pulled into the Tacos al Carbon parking lot 15 to 20 minutes after Soto's group had arrived at Tacos al Carbon. Soto, Reyes, and several of their friends were standing in the parking lot. Quintero heard Eric say, "There's the guy over there." Quintero heard defendant respond, "Nah, it's too much of a coincidence that he would be here too."

---

[1] Because Eric Flores and Marobert Flores share the name Flores, this opinion will refer to the men as Eric and Marobert.

[2] A police officer spoke with Diaz shortly after the charged offenses occurred. The police officer testified that Diaz stated that the "suspect" yelled and cursed at Soto at Club Bahia, and that the "suspect" said, "[W]e're gonna catch you slipping." Defendant contends that the suspect referred to by the officer was Eric. Defendant's contention is unpersuasive. Given Diaz's testimony that defendant argued with Soto at Club Bahia and Diaz's testimony that he told the officer that defendant was in an altercation with Soto at Club Bahia, we cannot conclude that the suspect referred to by the officer was necessarily Eric. Moreover, Diaz's trial testimony regarding defendant's "slipping" comment was consistent with his preliminary hearing testimony. At the preliminary hearing, Diaz also testified that defendant told Soto, "I'm gonna catch you slipping."

2

Reyes saw defendant's SUV stop "in the middle of the parking lot, lights off, for a cool minute." Soto said, "It's the guys we were fighting at the club." Reyes said, "Fuck it. Let's do them one on one." Defendant's SUV began driving through the parking lot, and Soto, Reyes, and five to 10 of their friends ran toward the SUV. When Soto's group was approximately eight feet away from the SUV, Reyes saw defendant reach under his seat. Reyes believed that defendant was reaching for a gun. Defendant smiled, and Soto said that defendant was "bluffing." Defendant then pulled out a gun, continued driving, and fired at Soto's group. Reyes felt a bullet go by his head. Two bullets hit Soto, fatally wounding him. Defendant accelerated and drove the SUV out of the parking lot. After the SUV left the parking lot, Reyes saw that Marobert's arm was injured.

Marobert testified that he was intoxicated at the time of the shooting, and that he did not remember whether he was present in the parking lot when the shooting occurred. At trial, defense counsel asked Reyes whether Marobert was running behind Reyes toward defendant's SUV. Reyes responded, "I guess. I don't know. I guess he was." At the preliminary hearing, Reyes testified that Marobert ran with Soto and Reyes toward defendant's SUV.

Defendant fled the San Jose area after the shooting, and he was arrested at the Mexican border on May 17, 2010. Defendant spoke with the police. Defendant never told the police that he fired the gun in self-defense, and he never told the police that he believed his life was in danger in the parking lot.

Police found two 25-caliber shell casings in defendant's SUV. Immediately after the shooting, police found two 25-caliber shell casings near Soto's body. Two bullets were removed from Soto's body.

The defense theory of the case was self-defense. Defendant testified that he drove to Tacos al Carbon, the only restaurant open late at night, in order to get burritos. He

3

explained that the gun was in the SUV because Eric had left it there several hours before the shooting. Defendant never checked to see if the gun was loaded.

Defendant testified that when he pulled his SUV into the Tacos al Carbon parking lot, "a lot of people" ran toward the SUV. The people were screaming and cursing at defendant. They said, "Stop the fucking truck. We're gonna fucking fuck you up." They also said, "Where's your little faggot ass scrap homey?" The use of the word "scrap" made defendant believe the people were members of the Norteño gang. Defendant noticed that some of the people in the advancing group had been involved in the fight at Club Bahia. Defendant was afraid that the people were going to punch him. When the person at the front of the advancing group was approximately eight feet away from defendant's SUV, defendant fired a warning shot to scare the group away. Reyes said, "You think you're gonna scare me with that shit?" Defendant saw Reyes lift up his shirt and reach toward his waist. Defendant feared that Reyes was going to "take out a weapon and start shooting," so defendant leaned forward and fired the gun. Defendant quickly drove out of the parking lot because he feared he was going to be shot.

Defendant explained that he fled to Mexico because he feared Norteño gang members would retaliate against him. Defendant admitted that his fear of "going to jail for the rest of [his] life" also caused him to flee.

Defendant denied making a comment regarding "slipping" at Club Bahia, and he explained that he merely pulled Eric away from the fight. Defendant denied stopping his SUV in the Tacos al Carbon parking lot. He explained that he was driving while the group ran toward his SUV, and that he was driving while he fired the shots. Defendant also denied that Eric pointed out Soto's group when defendant drove into the Tacos al Carbon parking lot. Defendant admitted that he fired at least four bullets at Soto's group.

4

An information charged defendant with murder of Soto (Pen. Code, § 187),[3] attempted murder of Reyes (§§ 664/187), and attempted murder of Marobert (§§ 664/187).  The information alleged that defendant personally and intentionally discharged a firearm in the commission of the charged offenses (§ 12022.53, subds. (c) & (d)), and that defendant intentionally killed by discharging a firearm from a motor vehicle (§ 190.2, subd. (a)(21)).

Defendant's case proceeded to a jury trial.  At the close of the prosecution's case-in-chief, defendant moved, pursuant to section 1118.1, for a directed verdict of acquittal on the charge of attempted murder of Marobert.  The trial court granted the motion.  The jury acquitted defendant of the remaining charges.

Defendant filed a petition for a finding of factual innocence, pursuant to section 851.8, arguing that the evidence established that he acted in self-defense.  The trial court denied the factual innocence petition, finding that there was reasonable cause to believe that defendant committed the charged offenses.  In support of its conclusion, the trial court cited the fact that defendant "did not see anyone from Mr. Soto's group brandish a weapon," the fact that defendant "fired from a moving vehicle," and the fact that the gun "could have been removed from [defendant's] vehicle earlier in the evening."

Defendant filed a notice of appeal, stating that he sought to appeal the denial of the factual innocence petition.  Defendant's timely appeal followed.

## DISCUSSION

Defendant contends that the trial court erred in denying his factual innocence petition, and he urges us to reverse the denial of the petition.  Defendant argues that he is factually innocent of all the charged offenses because the evidence—particularly his trial testimony—shows that he acted in lawful self-defense.  He alternatively argues that "this

---

[3] Subsequent unspecified statutory references are to the Penal Code.

5

court should at the very least reverse the denial as to the charge against Marobert" because Marobert failed to testify that he was part of the group that ran toward the SUV.

We conclude that there is reasonable cause to believe that defendant committed the charged offenses. We therefore will affirm the trial court's denial of the factual innocence petition.

### *The Statutory Framework of Section 851.8 and the Standard of Review*

Section 851.8 permits a person who has been arrested and charged with an offense, but not convicted of the offense, to petition the trial court for a finding of factual innocence. (§ 851.8, subds. (c) & (e).) Section 851.8, subdivision (b) specifies that a finding of factual innocence "shall not be made unless the court finds that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made." Section 851.8, subdivision (b) further states: "[T]he initial burden of proof shall rest with the petitioner to show that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made. If the court finds that this showing of no reasonable cause has been made by the petitioner, then the burden of proof shall shift to the respondent to show that a reasonable cause exists to believe that the petitioner committed the offense for which the arrest was made."

" ' " 'Reasonable cause' " ' is a well-established legal standard, ' "defined as that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." ' " (*People v. Adair* (2003) 29 Cal.4th 895, 904 (*Adair*).) Thus, to be entitled to relief under the reasonable cause standard articulated in section 851.8, a petitioner "must establish that facts exist which would lead no person of ordinary care and prudence to believe or conscientiously entertain any honest and strong suspicion that the person arrested is guilty of the crimes charged." (*People v. Matthews* (1992) 7 Cal.App.4th 1052, 1056; see *Adair, supra,* 29 Cal.4th at p. 904.) "To meet this burden, the petitioner

6

must show more than a viable defense to the crime. He . . . must establish ' "that there was no reasonable cause to arrest him in the first place." ' " (*People v. Medlin* (2009) 178 Cal.App.4th 1092, 1102.) Petitioners must " 'show that the state should never have subjected them to the compulsion of the criminal law—because no objective factors justified official action . . . .' " (*Adair, supra,* 29 Cal.4th at p. 909.) "In sum, the record must exonerate, not merely raise a substantial question as to guilt." (*Ibid.*) Section 851.8 therefore "precludes a finding of factual innocence if *any* reasonable cause exists to believe the [petitioner] committed the charged offense." (*Id.* at p. 907, italics in original.)

When ruling on a section 851.8 petition, a court is "not limited to the evidence presented at trial." (*Medlin, supra,* 178 Cal.App.4th at p. 1101.) The court "may consider any evidence relied upon to arrest and charge," as well as "facts disclosed after arrest." (*Id.* at pp. 1101-1102.) The court "may consider otherwise inadmissible evidence—such as police reports and evidence suppressed pursuant to section 1538.5." (*Adair, supra,* 29 Cal.4th at p. 905.)

When reviewing a trial court's ruling on a section 851.8 petition, an appellate court "must apply an independent standard of review and consider the record de novo in deciding whether it supports the trial court's ruling." (*Adair, supra,* 29 Cal.4th at p. 905.) "[A]lthough the appellate court should defer to the trial court's factual findings to the extent they are supported by substantial evidence, it must independently examine the record to determine whether the [petitioner] has established 'that no reasonable cause exists to believe' he or she committed the offense charged." (*Id.* at p. 897.)

***The Trial Court Properly Denied Defendant's Petition***

The trial court properly concluded that there is reasonable cause to believe that defendant committed murder of Soto and attempted murder of Reyes and Marobert. Contrary to defendant's assertion, the evidence does not establish that he fired the gun in lawful self-defense.

The "right of self-defense is limited to the use of such force as is reasonable under the circumstances." (*People v. Pinholster* (1992) 1 Cal.4th 865, 966, overruled on another point in *People v. Williams* (2010) 49 Cal.4th 405, 459.) A defendant therefore does not act in lawful self-defense where he employs "deadly force to repel a nonlethal attack." (*Ibid.*) Here, defendant used deadly force in response to nonlethal conduct. The evidence shows that members of Soto's group threatened to fight defendant and ran toward defendant's SUV. Defendant continued to drive as Soto's group advanced toward the SUV. None of the members of Soto's group brandished a weapon, and defendant did not testify that he saw anyone carrying a weapon. Rather, defendant testified that he merely saw Reyes lift his shirt and reach toward his waist. Given the circumstance that no one in Soto's group displayed a deadly weapon, combined with the circumstance that defendant was protected by his moving SUV, we cannot conclude that defendant was entitled to use lethal force. Defendant's firing of the gun therefore cannot be considered a lawful act of self-defense. (See generally *People v. Clark* (1982) 130 Cal.App.3d 371, 380, overruled on another ground in *People v. Blakeley* (2000) 23 Cal.4th 82, 92 [a misdemeanor assault must be suffered without the privilege of retaliating with deadly force].)

Moreover, the evidence suggests that defendant planned to kill members of Soto's group, thereby providing reasonable cause to believe that defendant committed murder and attempted murder. (See *People v. Leon* (2010) 181 Cal.App.4th 452, 463 [a defendant is guilty of premeditated murder or attempted murder where he engages in premeditation and acts with the specific intent to kill].) Immediately after the fight at Club Bahia, Diaz heard defendant make a threat to retaliate against Soto. Shortly after the fight, defendant brought a loaded gun to the Tacos al Carbon parking lot, the location at which Soto's group was socializing. Upon arriving at the parking lot, Quintero heard Eric tell defendant, "There's the guy over there." Reyes testified that defendant's SUV

8

stopped for a "cool minute" after it pulled into the parking lot, and that defendant then smiled and fired multiple shots at Soto's group. Because the foregoing evidence suggests that defendant traveled to the parking lot with the intent to kill members of Soto's group, the record does not exonerate defendant of the crimes of murder and attempted murder. Indeed, the circumstance that defendant fled to Mexico after the shooting bolsters the conclusion that defendant is not factually innocent. (See *People v. Vu* (2006) 143 Cal.App.4th 1009, 1030 [flight after the commission of a crime shows consciousness of guilt].) The trial court therefore properly concluded that defendant is not factually innocent of the crimes of murder and attempted murder.

Finally, we conclude that there is reasonable cause to believe that defendant committed attempted murder of Marobert. Although Marobert testified that he did not remember the events surrounding the shooting, other evidence suggests that defendant committed attempted murder of Marobert. At the preliminary hearing, Reyes testified that Marobert ran with Soto and Reyes toward defendant's SUV. At trial, Reyes testified that he noticed an injury on Marobert's arm after the shooting. A police report regarding the shooting states that "[f]ragments from one bullet struck Marobert" and caused "minor injury."[4] This evidence provides reasonable cause to believe that defendant fired a shot at Marobert. Defendant therefore is not factually innocent of attempted murder of Marobert. (See generally *People v. Medlin, supra,* 178 Cal.App.4th at p. 1102 [to establish factual innocence, a defendant must show that there was no reasonable cause to arrest him in the first place].)

---

[4] The parties do not mention the police report in their briefs. The police report is located at page five of the of the clerk's transcript. Because we are required to consider the record de novo, we may consider the police report in determining the issue of factual innocence. (See *Adair, supra,* 29 Cal.4th at p. 905 [when reviewing a trial court's ruling on a factual innocence petition, the reviewing court "must apply an independent standard of review and consider the record de novo"].)

9

In summary, the evidence provides reasonable cause to believe that defendant committed the charged offenses. We accordingly conclude that the trial court did not err in denying defendant's factual innocence petition.

### DISPOSITION

The order denying defendant's petition for a finding of factual innocence is affirmed.

_____
                                        RUSHING, P.J.

WE CONCUR:

_____
        PREMO, J.

_____
        ELIA, J.