Filed 11/26/25  P. v. Robertson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C102205 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE011421) |
| v. | |
| ARVIEL ROBERTSON, | |
| Defendant and Appellant. | |

A jury found defendant Arviel Robertson guilty of voluntary manslaughter.  (Pen. Code,[1] § 192, subd. (a)).  On appeal she argues there is insufficient evidence to support her conviction.  Alternatively, she contends the evidence warrants a reduction to involuntary manslaughter.  We find no merit to defendant's claims, and we decline to reduce her conviction.  We therefore will affirm the judgment.

We do, however, agree with the parties that the abstract of judgment must be corrected to reflect the correct conviction—voluntary manslaughter, not murder. Accordingly, we will direct the trial court clerk to correct this error.

---

[1]     Further undesignated section references are to the Penal Code.

1

BACKGROUND

Both defendant and R.W.[2] had a prior romantic relationship with J.C. R.W. and J.C. met in 2009 or 2010, and shared several children together. They co-parented their children after the romantic relationship ended.

Defendant met R.W. for the first time between February and October 2010, when R.W. was outside defendant's apartment; R.W. was "raisin' a fuss" with J.C. and waving a knife around. As she swung the knife around, R.W. said to defendant, " 'Bitch, I'll 'F' you up.' " Eventually R.W. left the apartment complex and said, " 'Good luck.' "

J.C. dated defendant in approximately 2011. R.W. was pregnant with J.C.'s child around the time J.C. dated defendant. R.W. did not know J.C. was dating defendant while she was pregnant; she found out after their relationship ended. R.W. and defendant communicated back and forth on text and cellphone calls to "mess" with each other about J.C. In 2011 or 2012, R.W. hit defendant, giving her a black eye.

Defendant and J.C. stopped dating in 2012, although defendant made some prank calls to J.C.'s cellphone for a while afterwards. Defendant and J.C. did not maintain any type of relationship after 2012.

In the late afternoon of July 2, 2021, R.W. gave J.C. a ride to a casino. J.C. saw defendant at the casino, though they did not speak to one another.

A few hours later, J.C. called R.W. to get picked up. R.W. agreed to get J.C., and she decided to order food from the casino to pick up while she was there. R.W. arrived in her car and pulled up to the curb in front of the casino entrance; J.C. got into the

---

[2] To protect their privacy, we will refer to the victim and witnesses by their initials. (Cal. Rules of Court, rule 8.90(b)(4), (10), (11).)

passenger side of R.W.'s car.[3]  R.W. saw defendant and J.C. and assumed they had been talking, which upset her.

Since her takeout food was not yet ready, R.W. drove away from the curb and parked in the parking lot next to the casino.  Approximately 20 minutes later, R.W. pulled out of the parking spot and started to drive back toward the casino when she saw defendant and K.R.[4] walking in the parking lot.  As she drove by them, R.W. quickly veered her car toward defendant and K.R. and told J.C. she "don't care about them."  J.C. heard K.R. say to defendant, "Bitch, go get my shit."  Defendant did not realize that R.W. was driving the car that veered toward her and K.R.; defendant let the incident "roll off [her] shoulder."

R.W. then pulled back up to the curb in front of the casino and parked her car.  She was still upset about defendant, and J.C.  R.W. exited her vehicle and went inside the casino to get her takeout food.

K.R. approached J.C. on the passenger side of R.W.'s car, and they exchanged some words.  Defendant pulled up to the curb in front of the casino and parked behind R.W.'s car.  Defendant rolled her windows down halfway so she could hear the conversation between J.C. and K.R.  K.R. came over to defendant's car, saying they should leave, but he first needed to cash in his chips from the casino.

Shortly thereafter, R.W. and K.R. walked out of the casino at the same time; R.W. was carrying her takeout food, and K.R. was "talkin[g] real aggressively" toward her.  R.W. and defendant were also exchanging "profanities and obscenities" toward each other.

---

[3]     On the court's own motion, the record on appeal is augmented to include People's Exhibit 7.  (Cal. Rules of Court, rule 8.155.)

[4]     K.R. is the father of defendant's youngest son.

3

R.W. put her takeout food on the trunk of her car, advanced toward K.R., and clapped her hands together. A security guard got in between R.W. and K.R., so R.W. turned away and started walking toward the driver's side window of defendant's parked car; when R.W. reached the car, she punched her arm through the partly open driver's side window where defendant was sitting. Neither of the two nearby security officers saw R.W.'s fist make contact with defendant. However, defendant said that R.W. hit her cheek, and that it "stung" and "hurt" and later became swollen.

R.W. retracted her arm from the car window and stepped backward from the vehicle as one security officer came and stood between the window of the car and R.W. The security officer physically directed R.W. back toward her own car. R.W. did not resist and moved back to her car, where she picked up her takeout food from on top of the trunk and headed toward the driver's side of her car. Defendant thought the incident was over.

However, R.W. opened her car door but then shut it, put her takeout food back down on the trunk of her car, and then hurried back over to defendant's car. R.W. told defendant to get out of the car, but defendant refused. Defendant did not see a weapon on R.W.; she believed R.W. was going to "hit on [her] some more," and defendant feared that she would get hurt "real bad."

R.W. pulled her arm back as she approached defendant's car window again; as she did so, defendant shot R.W. through the car window and then sped away. Defendant showed no emotion as she left.

R.W. died of a gunshot wound to her chin. At the time of the shooting, R.W. was five feet seven inches tall and 240 pounds, and defendant was 97 pounds.

4

DISCUSSION

I

*Voluntary Manslaughter*

Defendant contends there is insufficient evidence to support the voluntary manslaughter conviction because she actually and reasonably believed that she was in imminent danger of great bodily injury or death when she shot R.W. Defendant also argues that the force she used was reasonable under the circumstances. Alternatively, defendant asks this court to reduce her sentence to involuntary manslaughter if this court concludes that the evidence is sufficient to demonstrate that she acted in imperfect self-defense.

The People argue the evidence establishes that defendant acted with an actual but unreasonable belief that she was in imminent danger of death or great bodily injury, and she used force exceeding that which was reasonably necessary to repel the attack from R.W. The People also contend the facts do not support a reduction to involuntary manslaughter, and, in any event, the jury was not presented with this theory at trial; therefore, this court cannot consider it for the first time on review.

The People have the better argument on the sufficiency claim. We also agree with the People that we should not reduce defendant's conviction, albeit for a different reason.

A.      *Legal Principles and Standard of Review*

"Murder is the unlawful killing of a human being with malice aforethought." (*People v. Thomas* (2023) 14 Cal.5th 327, 385, citing § 187, subd. (a).) "A killing in perfect self-defense is justifiable homicide," not a crime. (*Thomas,* at pp. 385-386.) "Perfect self-defense requires that 'one must actually *and* reasonably believe in the necessity of defending oneself from imminent danger of death or great bodily injury.' " (*Id*. at p. 386.) "Imperfect self-defense, on the other hand, 'occurs when a defendant acts in the actual but unreasonable belief that he or she is in imminent danger of great bodily injury or death.' " (*Ibid*.) "[R]easonableness is determined from the point of view of a

5

reasonable person in the defendant's position. The jury must consider all the facts and circumstances it might expect to operate on the defendant's mind." (*People v. Randle* (2005) 35 Cal.4th 987, 997, overruled on another point in *People v. Chun* (2009) 45 Cal. 1172, 1201.)

"The principles of self-defense are founded in the doctrine of necessity. This foundation gives rise to two closely related rules. . . . First, only that force which is necessary to repel an attack may be used in self-defense; force which exceeds the necessity is not justified. [Citation.] Second, deadly force or force likely to cause great bodily injury may be used only to repel an attack which is in itself deadly or likely to cause great bodily injury. . . . Under these two principles a person may be found guilty of unlawful homicide even where the evidence establishes the right of self-defense if the jury finds that the nature of the attack did not justify the resort to deadly force or that the force used exceeded that which was reasonably necessary to repel the attack. [Citations.]" (*People v. Clark* (1982) 130 Cal.App.3d 371, 380.)

In reviewing the sufficiency of the evidence to support a criminal conviction, we review the record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) We do not reweigh the evidence or reevaluate the credibility of witnesses, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*Ibid*.)

A judgment will be reversed only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 484.) Under this standard, the defendant bears an "enormous burden" in demonstrating that the evidence was insufficient to support a conviction. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.)

6

B.    *Analysis*

Even assuming defendant was actually afraid that she was in imminent danger of great bodily injury, her fear was not reasonable under the circumstances. Defendant sat inside her car with the window rolled halfway down when R.W. approached the first time. Defendant knew R.W. did not have a weapon, and R.W. did not try to open the car door. Instead, R.W. punched defendant through the car window. There is conflicting evidence as to whether R.W. hit defendant's face, but even if we assume she did, it did not result in a significant injury. When R.W. returned a second time, defendant was still sitting in her car with the door closed and the window partly rolled down. As before, R.W. had no weapon and did not try to open the car door. Under these circumstances, a reasonable person in defendant's position may fear getting hit through the car window again, but they would not reasonably believe they were in imminent danger of great bodily injury or death.

We also reject defendant's claim that the deadly force used was reasonable here. R.W. punched through the car window and, assuming she hit defendant, caused only a minor injury. R.W. approached defendant's car again without a weapon, and she did not try to open the car door. Defendant was afraid that R.W. would hit her again and hurt her "real bad." These circumstances do not justify the use of deadly force.

In an effort to establish that her fear was objectively reasonable, defendant asks this court to consider the history of prior violence, the size disparity between her and R.W., her inability to retreat, R.W.'s "persistent aggression" at the casino, and the "[c]ontext of the [s]hooting." Essentially, defendant asks this court to reevaluate the evidence in a light most favorable to her and to draw contrary inferences from the evidence. Given the deferential standard of review, we cannot do so. (*People v. Myles* (2023) 89 Cal.App.5th 711, 740 ["for purposes of substantial evidence review, we are not permitted to draw inferences contrary to the verdict"].)

## II

### *Involuntary Manslaughter*

Defendant asks this court to reduce her conviction from voluntary manslaughter to involuntary manslaughter because she lacked both an intent to kill and a conscious disregard for human life.  We decline to do so.  This court has the authority to reduce a conviction only to a lesser included offense, not a lesser related offense.  (*People v. Lagunas* (1994) 8 Cal.4th 1030, 1034, 1040.)  Involuntary manslaughter is not a lesser included offense of voluntary manslaughter; rather, "[t]hey are merely siblings who have a common parent."  (*People v. Orr* (1994) 22 Cal.App.4th 780, 784-785.)

## III

### *Abstract of Judgment*

Defendant identifies, and the People concede, a clerical error in the abstract of judgment.  Defendant was convicted of voluntary manslaughter (§ 192, subd. (a)), but the abstract reflects a conviction for murder (§ 187, subd. (a)).

We have the " 'inherent power to correct clerical errors' " to make the records "reflect the true facts."  (*People v. Baker* (2021) 10 Cal.5th 1044, 1109.)  Since the abstract erroneously reflects that defendant was convicted of murder (§ 187, subd. (a)), we will order the trial court clerk to correct the abstract of judgment to reflect the conviction for voluntary manslaughter (§ 192, subd. (a)).

DISPOSITION

The judgment is affirmed. The trial court clerk is directed to correct the abstract of judgment to reflect the verdict for voluntary manslaughter (§ 192, subd. (a)) and deliver a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

_____\s\_____,
Krause, J.

We concur:

_____\s\_____,
Robie, Acting P. J.

_____\s\_____,
Mauro, J.

9