Filed 7/18/13  P. v. Shelton CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>    v.<br><br>PETER SHELTON,<br><br>       Defendant and Appellant. | C068708<br><br>(Super. Ct. No. 09F07206) |

        Defendant Peter Shelton stabbed Joseph Davidson in front of the Stockman Club in Fair Oaks.  Finding defendant not guilty of attempted murder, the jury convicted him of the lesser-included offense of attempted voluntary manslaughter on an imperfect self-defense theory.  The jury also convicted defendant of assault with a deadly weapon.  With respect to both convictions, the jury found defendant inflicted great bodily injury on Davidson.  With respect to the attempted voluntary manslaughter conviction, the jury found defendant personally used a deadly weapon.  The trial court sentenced defendant to serve an aggregate term of seven years in state prison and imposed other orders.

        On appeal, defendant contends:  (1) the trial court abused its discretion and violated his constitutional right to a fair trial by admitting into evidence testimony

concerning specific instances of violent conduct engaged in by defendant about 10 years before the incident at the Stockman Club; and (2) assuming the trial court did not err in admitting evidence of defendant's prior violent conduct, his trial counsel provided ineffective assistance by opening the door to the admission of this evidence. As we explain, while the trial court abused its discretion by ruling defense counsel opened the door to evidence of defendant's prior violent conduct, introduction of the challenged evidence was harmless.[1] Accordingly, we affirm the judgment.

FACTS

Defendant and Davidson did not like each other. In 2006, while working as a bartender at the Stockman Club, defendant kicked Davidson out of the bar and convinced the owner to permanently ban him from returning. After being removed from the bar, Davidson challenged defendant to fight him at a park across the street. According to Davidson, rather than follow him across the street, defendant stood in front of the bar and "ran his mouth." On another occasion, Davidson and a friend went to a deli near the Stockman Club. Defendant was also there. As Davidson explained: "[Defendant] was running his mouth saying we needed to leave. We need to leave. It's his place. It's his town." Defendant then walked outside. Davidson followed, tapped defendant on the shoulder, and slapped him across the face as he turned around. Defendant walked away without retaliating.

On August 19, 2009, Davidson, Jason Flatt, Shaun Ross, and Janee McCalister were drinking at another Fair Oaks bar called the Vent. After drinking for a couple of

---

[1] Defendant's claim of ineffective assistance of counsel is premised on his trial counsel's purported error in opening the door to evidence of defendant's prior violent conduct under Evidence Code section 1103. Our conclusion that counsel did not open this door renders unnecessary any discussion of this claim. In any event, in light of our conclusion that the erroneous introduction of such evidence was harmless, defendant's claim of ineffective assistance of counsel would also fail for want of prejudice.

Undesignated statutory references are to the Evidence Code.

2

hours, they decided to go back to the apartment Davidson shared with Flatt and Ross. McCalister asked to be driven to the Stockman Club so she could pick up her bicycle. The men agreed. As mentioned, Davidson was banned from entering the Stockman Club. So was Ross. Flatt drove the foursome in his pickup truck and parked in front of the bar. McCalister went inside. Davidson, Flatt, and Ross stood next to the truck.

While Davidson and his roommates waited for McCalister to return with her bicycle, defendant walked out of the Stockman Club. Ross greeted defendant with: "[H]ello, Peaches. How are you doing?" Defendant no longer worked at the Stockman Club, but nevertheless informed Davidson and Ross they would "need to leave his bar." Defendant was "staring them down" and had one hand at his waistband, "posturing like he had a weapon." Davidson told defendant they "weren't at his bar," explained they were waiting for McCalister, and told him to "get back inside." The conversation became heated. Defendant repeated several times Davidson and Ross "need[ed] to leave his bar." Davidson repeated: "[T]his ain't your bar, dude. We are here for a reason and then we are leaving. So leave us alone. Go back inside and leave us alone." Davidson "was getting more and more worked up." Ross told defendant he had "an open-ended offer" to "step over in the park and, you know, if he wanted to continue talking we'd go do something about it." At about this time, McCalister came out of the bar and said she would be staying there. Ross then told Davidson and Flatt: "He doesn't want to fight. He doesn't want to do anything. He just wants to run [his] mouth. Let's get out of here."

As Davidson, Flatt, and Ross were getting into the truck to leave, defendant said: "I'll get you motherfuckers when no one's around." Angered by this threat, Davidson pushed Ross out of his way and rushed defendant, pinning him against a wall and punching him in the face. Within seconds, Nazra Bertelli, the Stockman Club's doorman, tackled both Davidson and defendant. Davidson fell on top of defendant. Bertelli was on top of Davidson and had him in a rear chokehold. While on the ground, Davidson "felt a sudden, sharp pain in [his] side." Bertelli then got up and lifted Davidson off of the

3

ground, still holding him in the chokehold. Davidson was in a "daze" and his eyes were "rolling back in his head." Seeing that his friend was in trouble, Flatt yelled to Bertelli: "[Y]ou're killing him, man. You're killing him. Let him go." Before Bertelli could do so, defendant got up and lunged at Davidson. Davidson felt another sharp pain, this time in his chest. Bertelli then threw Davidson into the side of Flatt's truck. Davidson staggered upright as blood began to stream down his shirt. Lifting his shirt, Davidson said to Flatt: "[H]e stuck me, Jay. The fucker got me."

Defendant went back in the Stockman Club and locked the door behind him. Flatt and Ross helped Davidson into the truck and applied pressure to his stab wounds. They also restrained Davidson, who wanted to go after defendant for stabbing him. Law enforcement officers arrived on scene a short time later. They were unable to locate defendant. Paramedics also arrived and took Davidson to Mercy San Juan Medical Center. Davidson had two stab wounds. The first was to Davidson's left hip. The second was to the left side of the chest, narrowly missing his heart. Davidson survived his injuries.

Defendant called McCalister the day after the stabbing. McCalister told defendant he was in "a lot of trouble" and she was "going to try to stay out of it." Defendant asked McCalister to tell him where Davidson and his roommates lived. McCalister answered: "[W]hy do you want to know where they live, Pete? . . . [Y]ou stabbed Joe. He almost died. You won." Defendant did not respond.

As mentioned, the trial court admitted into evidence testimony concerning specific instances of violent conduct engaged in by defendant about 10 years before he stabbed Davidson in front of the Stockman Club. We describe this testimony in the discussion that follows. For purposes of this opinion, we need not describe defendant's evidence. Suffice it to say defendant did not dispute stabbing Davidson. Instead, he claimed self-defense. The jury accepted that defendant honestly believed in the need to use force against Davidson in order to defend himself, but found either this belief was unreasonable

4

or the amount of force used to defend himself from Davidson's attack was unreasonable. Accordingly, the jury found defendant not guilty of attempted murder and convicted him of attempted voluntary manslaughter on the basis of imperfect self-defense.

## DISCUSSION

### *Admission of Evidence of Defendant's Prior Violent Conduct*

Defendant contends the trial court abused its discretion and violated his constitutional right to a fair trial by admitting into evidence testimony concerning specific instances of violent conduct engaged in by defendant about 10 years before the incident at the Stockman Club.[2] While we agree admission of this evidence was an abuse of discretion, we find no prejudice.

### *Legal Principles*

Section 1101 provides, with certain exceptions, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (§ 1101, subd. (a).) One such exception is found in subdivision (b) of this section, which provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, . . . intent, . . . knowledge, . . .) other than his or her disposition to commit such an act."

Another exception is found in section 1103, which provides in relevant part: "(a) In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible

---

[2] Defendant's contention that the admission of evidence of his prior violent conduct under Evidence Code section 1103, subdivision (b), violated his constitutional right to a fair trial is forfeited because it was not raised in the trial court. (*People v. Catlin* (2001) 26 Cal.4th 81, 122-123.)

by Section 1101 if the evidence is: [¶] (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character. [¶] (2) Offered by the prosecution to rebut evidence adduced by the defendant under paragraph (1). [¶] (b) In a criminal action, evidence of the defendant's character for violence or trait of character for violence (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) is not made inadmissible by Section 1101 if the evidence is offered by the prosecution to prove conduct of the defendant in conformity with the character or trait of character and is offered after evidence that the victim had a character for violence or a trait of character tending to show violence has been adduced by the defendant under paragraph (1) of subdivision (a)."

### Additional Background

Prior to trial, the prosecution moved to exclude evidence concerning the reason defendant kicked Davidson out of the Stockman Club in 2006, i.e., fighting with another patron. Defense counsel argued this evidence was "important to establish . . . the beginning of the longstanding relationship between [Davidson] and [defendant] and the basis for . . . the aggression on the part of [Davidson] towards [defendant] as . . . this was the catalyst in terms of how the aggravated relationship began between the two." Defense counsel also stated he believed Davidson made a threat to defendant while being kicked out of the bar and argued defendant "believed that Davidson was coming back to make good on that threat" the night of the stabbing. Even though making a threat against defendant while being kicked out of the Stockman Club could be considered evidence of Davidson's violent character, defense counsel made clear that this evidence was not being offered to prove Davidson acted in conformity with that character the night of the stabbing. Instead, it was offered under section 1101, subdivision (b), to prove defendant's state of mind the night of the stabbing and Davidson's motive for attacking defendant that night. The trial court ruled defense counsel could elicit testimony concerning any threat made by Davidson while being kicked out of the bar. The trial

6

court also explained that evidence Davidson was kicked out of the bar for fighting with another patron would be admissible under section 1103, subdivision (a)(1), to prove he acted in conformity with his violent character the night of the stabbing, but warned defense counsel this would open the door to the prosecution to elicit evidence of defendant's violent character.

The prosecution also moved to introduce certain incidents of defendant's violent conduct under section 1101, subdivision (b). Specifically, the prosecution sought to elicit testimony concerning an incident in 2000 in which defendant attempted to stab a former roommate with a knife after they got into a fight over rent.[3] The prosecution argued the evidence was admissible under section 1101, subdivision (b), to prove defendant's intent the night of the stabbing. Defense counsel argued evidence of this prior incident was not admissible under section 1101, subdivision (b), to prove intent because the "circumstances in that case are very, very different from the circumstances in this case," but acknowledged it "would be appropriate" to admit this evidence under section 1103, subdivision (b), if defendant were to introduce evidence of Davidson's violent character under section 1103, subdivision (a)(1). The trial court agreed with defense counsel, ruled the evidence inadmissible under section 1101, subdivision (b), and warned defense counsel it would be admissible under section 1103 should he introduce evidence of Davidson's violent character. The prosecutor then informed the trial court about another incident that also occurred in 2000, about two weeks prior to the knife assault on defendant's former roommate, in which defendant held two guns to his former girlfriend's head. The prosecutor asked that this incident also be admitted into evidence, as well as evidence of defendant's "reputation for being intimidating, scary, threatening

_____

[3] The prosecution also sought to elicit testimony concerning an incident in 2009 in which defendant hit a man in the head with a gun in front of the Stockman Club after telling the man he was not allowed near the bar. However, the prosecution did not introduce evidence of this incident at trial. Accordingly, we shall not mention it further.

to people in the community," if defense counsel opened the door to character evidence under section 1103. The trial court agreed.

Defense counsel then asked for clarification regarding what evidence he could adduce without opening the door to the character evidence he did not want admitted against defendant. Defense counsel explained his position: "If I'm eliciting information from the witnesses about specific instances between [Davidson] and [defendant], my feeling is I'm not opening the door because it's not reputation, it's not opinion. And though it may be a specific incident, it's not a specific incident to show propensity for violence." The trial court agreed: "No, it's showing motive." The prosecutor objected: "It doesn't matter if [defense counsel's] intent is to show motive. But if evidence is introduced by the defense that is a prior instance of violence by the victim, then according to [section] 1103 the door has been opened." The trial court disagreed: "That's not necessarily true because, let's face it, we do give jurors an instruction that tells them that certain evidence was admitted for a limited purpose. [¶] And, in fact, what we can do is we can specify why the evidence is being used. We can tell the jurors, for example, this evidence is being used . . . by the defense to demonstrate the presence or absence of motive, for example." The trial court did agree with the prosecution that if defense counsel introduced evidence concerning violence between Davidson and someone other than defendant, the door would be opened under section 1103.

The prosecutor questioned Davidson about his prior confrontations with defendant during direct examination. As mentioned, Davidson testified that defendant worked as a bartender at the Stockman Club in 2006. Defendant kicked Davidson out of the bar and convinced the owner to permanently ban him from returning. After being removed from the bar, Davidson challenged defendant to follow him across the street to fight him at the park. Instead, defendant stood in front of the bar and "ran his mouth." On another occasion, Davidson and a friend went to a deli that was near the Stockman Club. Defendant was also there. He "was running his mouth" and told Davidson to leave

8

because: "It's his place. It's his town." When defendant walked outside, Davidson followed, tapped him on the shoulder, and slapped him across the face. Defendant walked away.

During cross-examination, defense counsel also asked Davidson about these incidents. Then defense counsel asked two sets of questions that caused the trial court to conclude evidence of Davidson's violent character was being offered to show conduct in conformity with that character, opening the door to the admission of such evidence against defendant under section 1103. First, defense counsel asked Davidson whether he had been trained in hand to hand combat during his military service. Davidson responded: "The funny part is I had [kitchen duty] that day." Second, defense counsel asked Davidson whether he was angry after being stabbed by defendant. Davidson answered: "Yup." Defense counsel then asked Davidson whether he wanted to pursue defendant. Davidson responded: "He has just tried to kill me. So yes." Defense counsel asked Davidson whether he was afraid. Davidson answered: "I ain't afraid of nobody." Defense counsel then asked: "And you would have done anything you could to go after [defendant] that you physically could; right?" Davidson responded: "If I could have." Finally, defense counsel asked: "You wanted to kill [defendant]?" Davidson answered: "I wanted to -- wanted to go get him. I wanted to get him and break every bone in his body and make him pay for what he just did to me, yes. [¶] Kill, no. [¶] He didn't hurt -- he didn't harm my kid. [¶] I wouldn't kill anybody unless they harmed my kid."

Before resting its case, the prosecution moved the trial court to reconsider its prior ruling prohibiting evidence of defendant's character for violence. After entertaining argument on the motion, the trial court granted the prosecution's motion. The trial court explained: "[T]he case law really doesn't cover this particular area where you have prior incidents involving the defendant and the victim as opposed to the victim and others to establish character evidence. [¶] Now, my ruling was based on the fact that if the defendant were aware of these incidents and aware of things occurring that it goes

9

towards his state of mind and the reasonableness of his response to an attack by the victim. So that's why I allowed it -- I allowed it in. [¶] And to be quite frank the case law seems to suggest that perhaps my ruling was wrong. [¶] Now, I'm willing to stick with my ruling. [¶] The problem that I have here is this. I think the testimony has gone further afield than that." Addressing defense counsel's questions concerning Davidson's state of mind after the stabbing, the trial court explained: "The only argument that could be made in regards to that evidence that happened after the incident is that -- look. Look at this -- look at [Davidson] and look at the steps that he would take to go after this man. He wanted [to] go after [defendant] after he had been stabbed to break every single bone in his body. That is character evidence." Addressing defense counsel's question concerning combat training, the trial court stated: "Counsel asked the victim didn't he have hand to hand combat in the army? And, you know, quite frankly -- and I -- counsel kind of left it there -- didn't elaborate on it. And I think counsel kind of knew maybe I'm getting in some murky areas here and I'm kind of running afield of maybe the court's ruling." The trial court considered Davidson's statement that he missed combat training because he had kitchen duty to be "very flip and very cavalier." The trial court explained: "There is only one way to term that evidence [*sic*] is that this guy knows how to use his hands. This guy knows how to, you know, fight people hand to hand. [¶] And that would show, you know, sort of an attenuated -- because not every person in the army who learns hand to hand is -- is -- is a violent person. But in the context of this particular victim it certainly paints a picture of him as being a violent person and having the character traits for violence."

Defense counsel then moved for a mistrial and argued he had not violated the trial court's directions with respect to opening the door to evidence of defendant's violent character. The trial court denied the motion and explained: "I tried to be very, very fine and very precise with the evidence I was going to allow in to go towards your client's state of mind. And this evidence went far afield. The army evidence was far afield.

10

Moreover the evidence of -- although it is evidence of this incident [*sic*]. But it wasn't evidence known to the defendant. It just paints the picture of Davidson violently, you know, going after him."

When the prosecution resumed its case, Sarah Harris was called to testify. Harris testified about certain incidents that happened in 2000 when she shared an apartment with her boyfriend Brody, defendant, and defendant's girlfriend Melissa. Harris witnessed defendant "push Melissa" and "smack her quite hard." Defendant would threaten people when "he didn't get his way." These threats included "beating people up, shooting people, stabbing people." He "would get angered very easily about little things. Get very frustrated very easily." During this time period, defendant called himself "Tigger" and would often refer to himself in the third person, telling people: "['Y]ou don't want to mess with Tigger or he'll fuck you up.[']" One morning, Harris awoke to the sound of "the top rail of a pistol sliding back." The sound came from the hallway outside her bedroom. As she sat up in bed, she heard Melissa scream. Harris then went into the living room and saw Melissa lying on the couch "with her hands up trying to hold [defendant] back. [¶] And he was literally standing on the couch over her with two pistols at her head." Defendant was "[s]creaming at her -- something about she slept with his best friend and she is going to die and he can't believe she did this to him." As Harris explained: "I stood in the hallway for about 15 seconds trying to decide what to do. [¶] I very slowly walk over. I put my arms on top of his arms and told him look. You don't want to do this. Just put them down. [¶] He willingly started pulling his arms down. I had to take the guns out of his hands. It took about a good two minutes to get that done."

Two weeks later, defendant and Brody got into an argument over rent money. The argument turned into a fist fight. During the fight, defendant pulled a knife. Harris described "Brody being bent over the back of the couch and he was bent over sideways and he was trying to hit [defendant] with one hand and trying to hold him back with the other. And [defendant] did have a knife and was trying to stab him in the kidney."

11

Harris intervened and grabbed defendant's arm as he tried to stab her boyfriend. She managed to take the knife out of defendant's hand, but not before Brody suffered two knife wounds. Defendant and Brody continued to fight for another 15 to 20 minutes. After the fight, as defendant was leaving the apartment, Harris told him she would be calling the police. Defendant responded: "I'll fucking kill you if you call the police."

*Analysis*

Defendant argues the trial court abused its discretion by ruling his trial counsel opened the door to character evidence under section 1103, subdivision (b). The Attorney General responds by arguing: "Davidson's statement that he wanted to break every bone in [defendant's] body after the stabbing had no bearing on [defendant's] state of mind -— since he had already fled the scene and would not know whether Davidson wanted to assault him or not -— and constituted specific act character evidence that tended to show he acted in conformity with that character trait the evening he was stabbed. The same is true of counsel's questioning of Davidson about his hand-to-hand combat training in the Army. The picture painted by these two items of evidence was that Davidson was a violent man who had received training in how to inflict violence." We conclude neither of these items of evidence constitutes character evidence within the meaning of section 1103.

We begin with defense counsel's question concerning Davidson's combat training. As defendant points out, the prosecutor elicited from Davidson that he was five feet seven inches tall and weighed 150 pounds at the time of the fight. Bertelli was six feet one inch tall and weighed around 300 pounds. Defendant was six feet tall and weighed around 180 pounds. Defendant argues that because the jury was likely to conclude Davidson was at a "great disadvantage" in the fight, and because Davidson testified during direct examination that his "normal doctor is at the V.A.," defense counsel asked whether he had combat training in the Army. Defendant continues: "This was never a line of questioning that addressed any character trait for violence or suggested any

12

conduct consistent with such a trait. Rather, it afforded the jury an opportunity to more fairly assess the combatants and the reasonableness of [defendant's] response." We conclude the question about combat training did not elicit character evidence. Indeed, a contrary conclusion would suggest that anyone who joins the military and receives the required combat training automatically has evidence of a violent character. Such is not the case.

Turning to defense counsel's questions concerning whether Davidson was angry after being stabbed by defendant, we find *People v. Myers* (2007) 148 Cal.App.4th 546 (*Myers*) to be instructive. There, the defendant was convicted of resisting an officer and committing a battery on that officer. While hitchhiking along a freeway onramp, the defendant was stopped and ordered to submit to a pat-down search. The defendant ran, was tackled, and then fought with the officer in an attempt to prevent discovery of the methamphetamine pipe in his pants pocket. (*Id*. at p. 549.) At trial, the defendant testified the officer was "overly aggressive," causing him to "'freak[] out'" and "'tr[y] to get away.'" (*Id*. at p. 550.) Based on this testimony, the trial court allowed into evidence certain instances of the defendant's violent conduct under section 1103. (*Id*. at pp. 550-551.) The Court of Appeal held this was error, explaining: "[S]ection 1103 contemplates that character evidence comprises something other than evidence of conduct at the time in question, because character evidence is used to show conduct 'in conformity with' his or her character. [Citation.] Wigmore, on whose treatise . . . section 1103 is based [citation], notes the relevance of character evidence is premised on a continuity of character *over time*: "'Character at an earlier or later *time* than that of the deed in question is relevant only on the assumption that it was substantially unchanged in the meantime, i.e., the offer is really of *character at one period to prove character at another* . . . .'" [Citation.] If evidence of a victim's conduct at the time of the charged offense constitutes character evidence under . . . section 1103, then every criminal defendant

13

claiming self-defense would open the door for evidence of his [or her] own violent character. [S]ection 1103 cannot be read so broadly." (*Id*. at pp. 552-553.)

Here, defense counsel asked Davidson whether he was angry at defendant immediately after being stabbed and whether he wanted to go after defendant for stabbing him. The Attorney General argues that, unlike *Myers*, *supra*, 148 Cal.App.4th 546, these questions went to Davidson's conduct *after* the time in question, i.e., the fight that led to the stabbing. According to the Attorney General, Davidson's responses revealed his violent character after the stabbing and tended to show he acted in conformity with that character during the fight that led to the stabbing. Defendant responds: "It is fair to say that the fight was not over for [Davidson] when [defendant] moved away. It was still *the time in question*." Defendant further argues, "the questions about his demeanor and intentions following the fight were directly relevant to the issue of the severity of injury incurred by [Davidson]. He was questioned extensively on direct examination about the nature of his injuries, his consciousness and his degree of pain. In that context, defense counsel's questions were fair and appropriate to provide the jury an honest and accurate picture of [Davidson's] condition at that point in time." These questions concerned the stabbing incident and its immediate aftermath. We conclude these questions went to Davidson's conduct and state of mind at the time in question. It would require us to read section 1103 too broadly to conclude defense counsel's questions opened the door to evidence of defendant's prior violent conduct.

The Attorney General also argues, relying primarily on *People v. Walton* (1996) 42 Cal.App.4th 1004 (*Walton*) and *People v. Clark* (1982) 130 Cal.App.3d 371 (*Clark*), defense counsel opened the door to evidence of defendant's prior violent conduct by eliciting testimony concerning Davidson's prior violent conduct towards defendant.[4]

---

[4]  *Walton* was disapproved on another point in *People v. Cromer* (2001) 24 Cal.4th 889, 901, fn. 3. *Clark* was disapproved on another point in *People v. Blakeley* (2000) 23 Cal.4th 82, 92.

This is so, argues the Attorney General, even though the trial court "incorrectly ruled that [such evidence] did not open the door to the introduction of evidence of [defendant's] character" because it was offered under section 1101, subdivision (b), rather than section 1103, subdivision (a)(1).

In *Walton, supra*, 42 Cal.App.4th 1004, the defendant argued with the victim on a bus and stabbed him to death. He was convicted of second degree murder. (*Id.* at pp. 1009-1010.) In support of his self-defense claim, the defendant sought to introduce evidence he previously saw the victim punch a woman in the head. The trial court ruled this evidence would be admissible under section 1103, subdivision (a), but the prosecution would then be allowed to introduce evidence of the defendant's extensive prior violent conduct —- including prior stabbings -— under subdivision (b) of that section. In light of this ruling, the defendant did not present any evidence of the victim's violent conduct. (*Id.* at pp. 1013-1014.) On appeal, the defendant claimed the trial court erred because the victim's prior violent conduct was not offered under section 1103, but rather under section 1101, subdivision (b). (*Id.* at pp. 1014-1015.) Rejecting this contention, the Court of Appeal explained: "First, because [defendant] made no such distinction in the trial court he may not urge such a distinction on appeal. [¶] Second, such an attempted distinction is unavailing. The identical argument was made and rejected in [*Clark, supra*, 130 Cal.App.3d at page 384]. The court stated: 'Defendant raised the issue of self-defense. He attempted to show that at the time of the homicide [the victim] was in a violent rage and approached him in a speedy and furious manner so that he was justified in reacting with deadly force. In support of this theory he directed his case at establishing the violent character of the victim. In view of this evidence the rebuttal evidence introduced by the People was proper. [¶] 'Defendant argues, however, he did not intend to prove the victim's character for violence -— he only sought to show his personal knowledge of the victim. We reject such a contention. The evidence introduced by defendant was directly probative of the victim's character for violent

15

behavior on the fatal day. In view of this evidence neither the court nor the prosecution was required to accept defendant's representation that he intended only to prove his personal knowledge of the victim. We find no error in the introduction of the character evidence in rebuttal.'" (*Id*. at p. 1015, quoting *Clark, supra*, 130 Cal.App.3d at p. 384 [holding evidence of victim's peaceful character was admissible under section 1103, subdivision (a)(2), to rebut defendant's evidence victim had violent character].)

Thus, *Walton, supra*, 42 Cal.App.4th 1004 and *Clark, supra*, 130 Cal.App.3d 370 stand for the proposition that where a defendant offers evidence of the victim's violent character in a self-defense case, and that evidence is admissible under both section 1103, subdivision (a)(1) (allowing prosecution rejoinder under subdivisions (a)(2) and (b) of that section), and section 1101, subdivision (b) (allowing no such rejoinder), the trial court does not abuse its discretion by admitting the evidence under section 1103, subdivision (a)(1), rather than section 1101, subdivision (b). Here, the trial court made the opposite ruling. It allowed defendant to present evidence of his prior interactions with Davidson under section 1101, subdivision (b), warned defense counsel he would open the door to evidence of defendant's violent character if he offered evidence of Davidson's violent character that went beyond the trial court's ruling, and agreed to give the jury a limiting instruction. We review for abuse of discretion a trial court's rulings on the admission or exclusion of evidence. (*People v. Fuiava* (2012) 53 Cal.4th 622, 667-668.) The fact that, under *Walton* and *Clark*, it would not have been an abuse of discretion for the trial court to have admitted evidence of defendant's prior interactions with Davidson under section 1103, subdivision (a)(1), does not mean the trial court abused its discretion by admitting the evidence under section 1101, subdivision (b). The Attorney General has not persuaded us the trial court's ruling was an abuse of discretion.

Moreover, even if we were to hold the trial court abused its discretion in ruling this evidence admissible under section 1101, subdivision (b), rather than section 1103, subdivision (a)(1), we cannot affirm defendant's convictions on this basis. Given how

16

adamant defense counsel was about not wanting to open the door to evidence of defendant's prior violent conduct, we have no doubt that had the trial court ruled his interactions with Davidson opened the door to such evidence, counsel would not have offered any evidence of the prior relationship between defendant and Davidson.  Thus, we cannot accept the Attorney General's argument that the fact the challenged evidence was "admissible" renders its admission "harmless."  Stated differently, had the trial court ruled evidence of defendant's prior interactions with Davidson opened the door to evidence of defendant's prior violent conduct, none of this evidence would have been admitted.

Finally, the Attorney General argues evidence of defendant's violent conduct was admissible under section 1102 because defendant's prior interactions with Davidson went to establish defendant's "character for non-violence or peacefulness."  Not so.  Section 1102 provides:  "In a criminal action, evidence of the defendant's character or a trait of his [or her] character in the form of an opinion or evidence of his [or her] reputation is not made inadmissible by Section 1101 if such evidence is:  [¶]  (a) Offered by the defendant to prove his [or her] conduct in conformity with such character or trait of character.  [¶]  (b) Offered by the prosecution to rebut evidence adduced by the defendant under subdivision (a)."  This section does not allow the admission of specific acts to prove either good or bad character.  (1 Witkin, Cal. Evidence (5th ed. 2012) Circumstantial Evidence, § 58, p. 436; *People v. McAlpin* (1991) 53 Cal.3d 1289, 1309.) Defendant did not offer opinion or reputation evidence under section 1102, subdivision (a).  Nor did the prosecution offer such evidence under subdivision (b) of this section. This provision is irrelevant to the issues raised on appeal.

In sum, the trial court ruled that while evidence of defendant's prior interactions with Davidson was admissible under both section 1101, subdivision (b), and section 1103, subdivision (a)(1), this evidence would be admitted under the former section and the jury would be instructed on the limited purpose of the evidence.  The trial court set

17

forth ground rules for defense counsel to follow with respect to eliciting such evidence and warned counsel that eliciting other evidence of Davidson's violent character would open the door to evidence of defendant's prior violent conduct under section 1103, subdivision (b). We cannot conclude this ruling was an abuse of the discretion the trial court possesses in evidentiary matters. We do hold, however, the trial court abused its discretion by ruling defense counsel violated the agreement concerning admission of defendant's prior relationship with Davidson, thereby opening the door to evidence of defendant's prior violent conduct. Nevertheless, as we explain immediately below, this error was harmless.

### *Prejudice*

Defendant argues, and we agree, the evidence allowed to come in under section 1103, subdivision (b), was damaging. The fact that this evidence was damaging does not end the inquiry. In order to find prejudice, we must find a reasonable probability the error affected the verdict. (*People v. Chandler* (1997) 56 Cal.App.4th 703, 711.) On this record, there is no such probability. Defendant did not dispute stabbing Davidson. Instead, he claimed self-defense. The jury accepted that defendant honestly believed in the need to use force against Davidson in order to defend himself, but found either this belief was unreasonable or the amount of force used to defend himself from Davidson's attack was unreasonable. Accordingly, the jury found defendant not guilty of attempted murder and convicted him of attempted voluntary manslaughter on the basis of imperfect self-defense. There is no reasonable probability that had the challenged evidence been excluded, the jury would have found it to be reasonable for defendant to pull out a knife and stab Davidson twice, both times while Davidson was being restrained by Bertelli, the Stockman Club's six-foot one-inch, 300-pound doorman. Moreover, had defendant preserved for review his contention that admission of the challenged evidence violated his constitutional right to a fair trial, we would also conclude admission of this evidence

18

was harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].)

DISPOSITION

The judgment is affirmed.


          HOCH         , J.


We concur:


      ROBIE       , Acting P. J.


      MURRAY     , J.