Filed 9/27/21  In re T.K. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re T.K.,<br><br>a Person Coming Under the Juvenile Court Law. | B309054<br><br>(Los Angeles County Super. Ct. No. NJ30152) |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>T.K.,<br><br>     Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John C. Lawson II, Judge.  Affirmed.

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Juvenile T.K.[1] appeals from the juvenile court's order sustaining a Welfare and Institutions Code section 602[2] petition finding he committed assault by means of force likely to produce great bodily injury in violation of Penal Code section 245, subdivision (a)(4).

T.K. argues the juvenile court's questioning of witnesses during the bench trial was prejudicial misconduct. We disagree. The juvenile court's questioning was measured and designed to clarify events portrayed on a grainy cellular phone video, which shows multiple minors punching or kicking the victim while hurling derogatory insults.

T.K. also contends there was insufficient evidence to support the judgment and that his self-defense or defense-of-others claim was improperly rejected. T.K.'s assertion that he needed to defend himself or his friends is contradicted by the victim, his own testimony, and the video. The juvenile court is exclusively entrusted with assessing witness credibility and was well within its province to reject T.K.'s assertions.

Accordingly, we affirm.

---

[1] We refer to the minor by his initials to protect personal privacy. (See Cal. Rules of Court, rules 8.90(b)(4), 8.401(a)(2).)

[2] Subsequent undesignated statutory references are to the Welfare and Institutions Code unless otherwise specified.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Assault

On February 10, 2020, Jared L.,[3] a student at California State University, Long Beach, was riding his bicycle home from school when he encountered T.K. and a large group of other minors who were also riding on a narrow bike path.  As Jared L. struggled to get past the group, he was harassed and eventually slapped by one of them.

Jared L. turned around, rode up to the minor who slapped him, and bumped his own bicycle into that person's bicycle, saying, "You don't hit people."  When Jared L. thereafter tried to continue his journey home, a member of the group rammed into his bicycle from behind, knocking him to the ground.

Once on the ground, a group of approximately eight minors surrounded Jared L.  One of them said, "Why are you messing around with my homie?"  Jared L. replied, "Your homie just hit me."  Another member of the group then punched Jared L.

As more of the group began attacking him, Jared L. began flailing his arms in defense.  T.K. then grabbed Jared L. by the backpack and threw him to the ground.

The minors then beat and kicked Jared L.  At some point, they asked where his wallet was.  The minors then threw Jared L.'s bicycle into the adjacent riverbed.  During the attack, someone struck Jared L.'s head with a glass bottle, leaving glass in his hair and cut wounds.

---

[3] We refer to the victim by his first name and last initial to protect personal privacy.  (See Cal. Rules of Court, rule 8.90(b)(4).)

3

City of Seal Beach Police Department Officer Benjamin Jaispream responded that day. He spoke with Jared L. and took photographs of injuries to his face, left arm, and left leg. Nearby, Officer Jaispream found a broken beer bottle on the rocks next to the riverbed.

T.K. testified on his own behalf. After the assault began, T.K. said he took out his phone to record since he wanted to post the fight to social media. "[T]his is going to be a cool clip for my edit or whatever," he testified.

Once he saw Jared L. pushed to the ground, T.K. testified he began to back away, but Jared L. pulled on T.K.'s arm with one hand, and on T.K.'s shirt collar with the other. Jared L. then punched T.K. on the left side of his body. The punch caused T.K. to fall down the embankment.

T.K. then ascended the embankment and observed Jared L. being attacked by the other minors, "[his] friends." T.K. walked up to Jared L. and "push[ed]" him one more time because he was punching his friends. T.K. then walked away from the fight and rode away.

In stark contrast with T.K., Jared L. denied punching T.K. at any time during the assault or throwing him down the embankment.

## B. The Section 602 Petition and Trial

The People filed a two-count section 602 petition, alleging T.K. committed second degree robbery in violation of Penal Code section 211, and assault by means of force likely to produce great bodily injury, in violation of Penal Code section 245, subdivision (a)(4).

Following a bench trial, the juvenile court declined to make a true finding on count 1, but sustained the petition as to count 2

4

(declaring that count to be a felony), and placed T.K. on home probation.

T.K. timely appealed.

## DISCUSSION

### A. The Court's Questioning Was Proper

#### 1. *Standard of Review and Applicable Law*

We review a judicial misconduct challenge on a case-by-case basis. (*People v. Sanders* (1995) 11 Cal.4th 475, 531-532.) We first " ' "determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial" ' " and then "make that determination on a case-by-case basis, examining the context of the court's comments and the circumstances under which they occurred." (*People v. Abel* (2012) 53 Cal.4th 891, 914.)

On the other hand, it must be said that a trial court can control the examination of witnesses to ensure the efficient "ascertainment of the truth," and may examine witnesses on its own motion. (Evid. Code, § 765, subd. (a); Pen. Code, § 1044.) " '[I]t is not merely the right but the duty of a trial judge to see that the evidence is fully developed before the trier of fact and to assure that ambiguities and conflicts in the evidence are resolved insofar as possible.' [Citations.]" (*People v. Mayfield* (1997) 14 Cal.4th 668, 739.) The "court has both the discretion and the duty to ask questions of witnesses, provided this is done in an effort to elicit material facts or to clarify confusing or unclear testimony." (*People v. Cook* (2006) 39 Cal.4th 566, 597.)

In undertaking an examination, the trial court should be careful not to take on the role of either the prosecutor or the defense. "The court's questioning must be ' "temperate,

nonargumentative, and scrupulously fair." ' " (*People v. Cook*, *supra*, 39 Cal.4th at p. 597; see also *People v. Brown* (1993) 6 Cal.4th 322, 333 [a defendant has a due process right to an impartial judge]; accord, *Arizona v. Fulminante* (1991) 499 U.S. 279, 309 [111 S.Ct. 1242, 113 L.Ed.2d 302].)

    2.    *The Juvenile Court's Questioning*

T.K. argues the court committed misconduct by asking numerous and detailed questions of the witnesses. In doing so, the argument goes, the court improperly aligned itself with the prosecution in a way that made the court no longer impartial but rather taking on the role and function of the prosecutor. T.K. insists the court's questioning were "not simply clarifying." Instead, the court was evidently unsatisfied with the prosecutor's own examination, and so "stepped into the role of a second prosecutor."

The first challenged testimony occurred after Jared L. had completed his direct and cross-examination. The juvenile court asked the prosecutor to play the video from the beginning. T.K. specifically complains that the court asked the prosecutor to play the video in "few-second increments at a time," while asking Jared L. a series of questions, including who was hitting him, why he stood up, and what was happening with Jared L.'s backpack. T.K. highlights the following exchanges:

"The Court: And at this point – what are you trying to do at this point?

"[Jared L.]: Defend myself.

"The Court: And at this time approximately how many strikes or blows are you feeling?

"[Jared L.]: Right around, like, five or so. Five or six.

6

"The Court: And can you tell from what direction they're coming from?

"[Jared L.]: At the time it felt like every direction."

"The Court: What did you say to this person when you bumped their wheel?

"[Jared L.]: I said, 'You don't fucking hit people.'

"The Court: Did you – did the person respond to you?

"[Jared L.]: No.

"The Court: When you rode back to that group, did you ever punch anybody?

"[Jared L.]: No.

"The Court: You ever slap somebody back?

"[Jared L.]: No."

The second examination highlighted by T.K. is his own testimony that followed the completion of direct and cross-examination. T.K. complains that the juvenile court examined T.K. for "six pages" worth of the reporter's transcript.

"The Court: . . . So I do see the witness grabs you by the arm at that time. You're indicating that's you?

"[T.K.]: Yes.

"The Court: Why are you so close to him when all this started?

"[T.K.]: I was trying to get a clear video for my social media.

"The Court: And which hand is your camera – your phone in?

"[T.K.]: I'm right-handed, so I was using my right hand.

"The Court: All right. Counsel, could you play it again another 10 seconds[?] [Video plays.] . . . So you see where the witness turns around and you're now out of the screen?

"[T.K.]: Yes.

"The Court: Where are you at this point?

"[T.K.]: I'm falling down the embankment.

"The Court: You're falling down the embankment?

"[T.K.]: Yes.

"The Court: And did you actually – did you ultimately end up on the ground or just stumble?

"[T.K.]: I – I was rolling on my head and my hip to the bottom."

"The Court: So that's you coming back into the screen at approximately 13 seconds?

"[T.K.]: Yes.

"The Court: 14 seconds? And that's you pushing him?

"[T.K.]: Yes.

"The Court: And so you came from up the embankment. You got up, came up the embankment, and then went over and pushed him; is that correct?

"[T.K.]: Yes."

3.    *Analysis*

We have reviewed the video of the assault, as well as the reporter's transcript on appeal. The jerky, low-resolution video is 41 seconds long, and portrays multiple minors punching or kicking Jared L., while being cheered on with shouts of "Get his ass!" clearly audible.

The juvenile court's questioning did not result in an improper alignment with the prosecution or deny T.K. a fair trial. To the contrary, the juvenile court's questioning was measured, clarifying the order of events portrayed by the video, and improving the record on appeal. (See *People v. Hawkins* (1995)

8

10 Cal.4th 920, 947-948 [trial judge may question witnesses to clarify the evidence or fill in evidentiary gaps].)

It also must be plainly stated that no jury was involved; this was a court trial where the juvenile judge was the finder of fact. Prejudice in the sense of improperly influencing the jury has no bearing, and T.K.'s counsel identifies not a single case involving prejudicial witness examinations in a bench trial setting.[4]

## B. The Evidence Was Sufficient and Does Not Support a Claim of Self-defense or Defense of Others

### 1. *Sufficiency of the Evidence*

In a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable

---

[4] The three jury trial cases cited in T.K.'s briefing are therefore inapposite. In *People v. Santana* (2000) 80 Cal.App.4th 1194, the trial court used the prosecutor's terminology in questioning police officers, dwelled on evidence from defense witnesses that was adverse to the defendant, and limited defense counsel's cross-examination of witnesses. (*Id.* at pp. 1207-1209.) In *People v. Robinson* (1960) 179 Cal.App.2d 624, the trial court was described as having engaged in "constant and extensive interruptions and activity" such as to create "in the minds of the jurors the impression that the court favored the case of the People." (*Id.* at p. 631.) In *People v. Williams* (2021) 60 Cal.App.5th 191, the trial court "interrupted the defense's cross-examination at least a dozen times with its own questions and sua sponte objections," "[asked] follow up questions that appeared to minimize potential reliability problems with" the prosecution expert's position, and "did not allow relevant and appropriate cross-examination on the scientific reports and studies." (*Id.* at p. 205.)

to supporting the judgment to determine whether substantial evidence supports the finding of guilt beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 562, 578.)  Reversal is appropriate only where it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the judgment]." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

As discussed, T.K. testified Jared L. was the initial aggressor in the assault because Jared L.'s left hand made contact with his arm.  T.K. claimed he was defending himself because Jared L. pulled on his arm with one hand and pulled on his shirt collar with the other.  He then punched T.K. on the left side of his body causing him to fall down the embankment. Afterwards, T.K. allegedly scrambled up the embankment, "walked up to Jared L. and pushed him one time in order to defend himself and his friends."  T.K. says he then "pedal[led] away to get away from the whole situation."

The juvenile court evidently rejected this testimony, and T.K.'s version of events is not supported by the video.  (See *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [it is the exclusive province of the trier of fact to assess the credibility of witnesses and the court will not substitute its own evaluation of witness credibility for that of the fact finder].)

2.    *Self-defense/Defense of Others*

Someone who reasonably fears infliction of imminent bodily injury is allowed to use all force reasonably necessary to prevent the harm.  (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064-1065; see Pen. Code, §§ 692, 693.)  The reasonableness of the apparent danger is evaluated from the viewpoint of a reasonable person in the defendant's position and "[t]he [factfinder] must consider all

10

the facts and circumstances it might ' "expect[ ] to operate on [the defendant's] mind." ' " (*Minifie, supra,* at p. 1065.)

" '[W]here the evidence is uncontroverted and establishes all of the elements for a finding of self-defense it may be held as a matter of law that the [use of force] was justified; however, where some of the evidence tends to show a situation in which a [use of force] may not be justified then the issue is a question of fact for the [factfinder] to determine. . . .' [Citation.]" (*People v. Levitt* (1984) 156 Cal.App.3d 500, 509, disapproved on another ground in *People v. Johnson* (2016) 62 Cal.4th 600, 649, fn. 6.)

On the other hand, "[w]here the evidence is uncontroverted, but reasonable persons could differ on whether the resort to force was justified or whether the force resorted to was excessive, then the issue is a question of fact for the trier of fact." (*People v. Clark* (1982) 130 Cal.App.3d 371, 378-379.) In such cases, " '[t]he [factfinder is] not required to accept [the] defendant's version of the [incident].' [Citation.]" (*People v. Bates* (1967) 256 Cal.App.2d 935, 939.)

T.K.'s claim of self-defense or defense of others is specifically contradicted by his own testimony that he pushed Jared L., not to defend himself or others, but to stop the group of bicyclists from hitting Jared L. further. At that point, however, Jared L. was fighting at least four other individuals. A reasonable person under such circumstances would not have subjectively entertained a belief that there was a need to defend the group of bicyclists from Jared L. (See *People v. Minifie, supra,* 13 Cal.4th at p. 1065.)

T.K. also cannot claim self-defense as a matter of law because a member of the group struck the first blow. It is well-settled law that someone who initiates a fight cannot thereafter

claim self-defense unless he made efforts to stop the fighting and communicated such efforts.  (See, e.g., *People v. Hecker* (1895) 109 Cal. 451, 463-464; CALCRIM No. 3471 ["A person who (engages in mutual combat/[or who] starts a fight) has a right to self-defense only if: [¶] 1. (He/She) actually and in good faith tried to stop fighting; [¶] [AND] [¶] 2. (He/She) indicated . . . that (he/she) wanted to stop fighting and that (he/she) had stopped fighting. . ."].)

At the time T.K. pushed Jared L., T.K. had no need to defend himself, as he had allegedly just climbed out of the embankment and could have walked away.  This he did not do.  Instead, T.K. even mocked Jared L. after pushing him onto the rocks.

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED

CRANDALL, J.*

We concur:

CHANEY, J.                    BENDIX, Acting P. J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12